RESERVE MINING COMPANY, Relator,

v.

MINNESOTA POLLUTION CONTROL AGENCY, Respondent.

No. C2–84–1255.

Court of Appeals of Minnesota.

March 5, 1985.

Maclay R. Hyde, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, for Reserve Min. Co.

Hubert H. Humphrey, III, Atty. Gen., Eldon G. Kaul, Asst. Atty. Gen., Roseville, for Minnesota Pollution Control Agency.

Bronson C. LaFollette, Wis. Atty. Gen., Chris Heikenen, Asst. Atty. Gen., Madison, Wis., for amicus curiae State of Wis., Dept. of Justice.

Grant J. Merritt, Minneapolis, for amicus curiae Minnesota Environmental Control Citizens Assn., Northwoods Environmental Institute and Peninsula Environmental Coalition.

Wayne G. Johnson, Silver Bay, for City of Silver Bay and City of Beaver Bay.

Frank J. Kelley, Michigan Atty. Gen., Stewart H. Freeman, Asst. Atty. Gen., Lansing, Mich.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator Reserve Mining Company appeals a portion of an effluent discharge permit granted by the Minnesota Pollution Control Agency. Reserve challenges the portion of the permit which set an amphibole fiber effluent limitation of 1 million fibers per liter. Reserve claims (1) the amphibole fiber limitation is arbitrary and capricious, (2) the MPCA exceeded its authority by setting this limitation, and (3) the 1 million fibers per liter limitation is not supported by substantial evidence.

## FACTS

Reserve operates an on-land taconite tailings disposal facility at Mile Post 7 near Silver Bay, Minnesota. An integral part of this disposal system is a tailings pond area. The pond is 2.26 square miles in area and is connected to Reserve's processing plant by pipelines. Tailings are removed and clear water is returned to the taconite processing plant for process use. Coarse tailings are used to construct dams behind which fine tailings, excess coarse tailings, and water are deposited.

The plant and tailings basin were designed to operate as a single closed system without releasing tailings into nearby surface waters. A drop from full production

by Reserve, however, has caused excess water to accumulate in the tailings pond at a rate of 1000 gallons per minute. The rising water level in the ponds area threatens the integrity of its dams and poses a safety risk. Consequently, the need to discharge pond waters, which was anticipated to arise at the end of the mining cycle, has been accelerated. Reserve advised the MPCA of this situation in April 1983.

On December 20, 1983, the MPCA authorized the hiring of a consultant to evaluate treatment and discharge options. MPCA staff drafted a permit regulating Reserve's proposed discharge. The draft permit contained two fiber limitations: (1) a daily maximum of 15 million fibers per liter and (2) a thirty day average of 10 million fibers per liter. The authority for these standards was the nondegradation water quality standard applicable to the receiving water, the Beaver River. *See* Minn.R. 7050.-0180 (1983). These standards were calculated from data indicating the natural level of amphibole fibers occurring in the Beaver River is 15 million fibers per liter.

On April 27, 1984, the draft permit was placed on public notice. On May 22, 1984, the MPCA Board considered the proposed permit for the first time. The MPCA Board raised a number of issues, including the appropriateness of the fiber limitations recommended by the MPCA staff. Continued hearings were held on May 31 and June 12, 1984. After the May 31 hearing, the MPCA Board requested the MPCA staff to prepare a permit which eliminated fiber limits. At the June 12 hearing, the MPCA staff indicated its objections to this procedure stating:

The MPCA staff still believes that the draft permit should include a fiber control standard for asbestos fibers at the time the permit is issued. The MPCA staff believes that this is necessary for the following reasons:

1. A fiber control standard is critical to assuring that, at a minimum, the water quality of the Beaver River is maintained. The staff believes that a 24-hour maximum fiber limitation is appropriate because it is the means of determining compliance. A fiber standard based on

only a thirty day average or annual average would restrict the staff's ability to enforce the permit.

2. Because the original draft permit, as public noticed, included a fiber number, the staff believes that the permit cannot be issued without a fiber standard which is at least as restrictive as that originally proposed. To issue a permit with no standard or with a less restrictive standard would not avail the public the opportunity to comment on a less restrictive permit. Comments on the draft permit were based on the presumption that the permit would include certain minimum requirements. If the permit includes a standard which is equal to or more restrictive than proposed in the permit, renoticing would not be required.

3. The U.S. Environmental Protection Agency (EPA) has commented on the original permit as public noticed and has indicated that the permit should include fiber limitations. * * * Without a fiber limitation the EPA has indicated they cannot agree to the permit.

After the June 12, 1984 hearing, the MPCA Board apparently concluded an amphibole fiber limit was necessary and that the limitation should be based on the capabilities of the treatment technology used at the facility. The MPCA Board set a fiber effluent limitation of a daily maximum of one million fibers per liter in the final permit issued June 18, 1984, and Reserve appealed.

## ISSUES

1. Was the 1 million fiber per liter limit arbitrary and capricious?

2. Was the 1 million fiber per liter limit supported by substantial evidence?

3. Did the MPCA Board have the authority to set an amphibole fiber limit?

## ANALYSIS

### I.

### Scope of Review

This appeal is brought pursuant to Minn. Stat. § 115.05, subd. 11 (1982), which provides:

Any person aggrieved by any final decision for which judicial review is not provided in chapter 14 may obtain judicial review thereof pursuant to sections 14.63 to 14.70.

*Id.* Consequently, the scope of judicial review in this matter is governed by Minn. Stat. § 14.69 (1984), which states:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

*Id.*

## II.

### Arbitrary and Capricious

■ 1. We believe the MPCA Board's 1 million fiber per liter fiber limit was arbitrary and capricious because the limit was set without providing written findings and reasons. This is a matter of great importance having an environmental impact upon the citizens of at least three states. Likewise, the economic implications of the Board's permit are also significant to Reserve and the communities of northeastern Minnesota.

■ If this matter had arisen from a contested case proceeding, the Board would have been bound by Minn.Stat. § 14.62, subd. 1, which provides:

Every decision and order rendered by an agency in a contested case shall be in writing, shall be based on the record and shall include the agency's findings of

fact and conclusions on all material issues.

*Id.* Any failure to request a contested case hearing cannot be attributed to Reserve. Reserve cooperated with the Board and participated with the reasonable expectation the issued permit would resemble the permit that was placed on public notice. The final permit, however, was issued after all public meetings were held and did not give Reserve an opportunity to seek contested case status of this matter.

■ 2. The MPCA Board had the discretion to hold a contested case hearing. At a minimum, the Board should have given Reserve and the other interested parties the opportunity for a contested case hearing once the Board decided to materially alter the terms of the noticed permit. Instead, the Board issued the permit with the 1 million fiber per liter limit without providing written findings and reasons for its decision.

■ Although it is clear the Board was not governed by Minn.Stat. § 14.62, subd. 1 in this proceeding, this does not mean the Board need not provide any reasons for its decision. A decision of this magnitude not supported by written findings and reasons is arbitrary and capricious because "it represents the agency's will rather than its judgment." *Peoples Natural Gas Company v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 352 (Minn.Ct.App. 1983) *pet. for rev. denied,* (Minn. Apr. 24, 1984); *see Markwardt v. State Water Resources Board,* 254 N.W.2d 371, 374 (Minn. 1977).

3. Apart from the inherent arbitrariness of an order without written reasons and findings, appellate review of a technical order of this type without written findings and reasons is (1) unfair to the appealing party and (2) highly impractical for the reviewing body.

The review of an appeal from an agency action not supported by written findings and reasons would create a nearly impossible burden for aggrieved parties because administrative decisions are presumed cor-

rect and given a narrow scope of review. *See Reserve Mining Company v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977); Minn. Stat. § 14.69 (1984).

> [Courts] adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience.

*Herbst,* 256 N.W.2d at 824.

■ The state argues that the reviewing court should read the voluminous file and determine the reasons and adequacy of the agency's action. The court is interested in determining the collective reasons of an agency's action as enunciated by the agency. Reading a transcript might give the court ideas of individual member's views, but one member's views may not reflect the basis for the action of other members. Therefore, an agency consisting of more than one member should arrive at a decision and adopt findings and reasons for it in an appropriate collective action or resolution contemporaneously with the decision.

4. We refuse to allow an agency, which makes an important decision of this nature without written findings and reasons, to rationalize its action on appeal. As demonstrated by this appeal, an appellant in this situation must intuit the rationale for the agency's decision and prepare argument based on their speculation as to the agency's thinking. The agency, on the other hand, is able to rationalize its decision in retrospect and in direct response to an appellant's contentions. Sanctioning this procedure would be unfair to appellants and "runs the risk inherent in any opportunity to rationalize or justify what one has done before." *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416 (Minn.1981).

5. Review of an agency order in this procedural posture is impractical. "Courts are ill-equipped to deal with technical engineering problems." *Reserve Mining Company v. Minnesota Pollution Control Agency,* 267 N.W.2d 720, 727 (Minn.1978).

Here, the MPCA Board has largely deprived this court of the benefit of its "expertise and their special knowledge in the field of their technical training, education, and experience." *Herbst,* 256 N.W.2d at 824. Affirmance of this matter under these circumstances would be unfair to all concerned parties.

Our conclusion the MPCA Board's 1 million fiber per liter limitation was arbitrary and capricious is guided by the principles set forth in *Honn.* In *Honn,* a city council made a zoning decision without providing written findings or reasons for its decision. 313 N.W.2d at 415–16. In declaring the proper method of review of the city council's action, the Minnesota Supreme Court stated:

> The municipal body need not necessarily prepare formal findings of fact, but it *must, at a minimum, have the reasons* for its decision *recorded or reduced to writing* and in more than just a conclusory fashion. By failing to do so, it runs the risk of not having its decision sustained.

*Id.* at 416 (emphasis supplied).

■ The principle announced in *Honn* for decisions of municipal bodies is equally, if not more, applicable to this situation. The decisions of the MPCA Board are significant. They affect large numbers of people and involve projects costing millions of dollars. Therefore, we hold that an agency decision should normally be supported by written findings and reasons, in more than just a conclusory fashion, before expecting the order or decision to be sustained on appeal.

Our resolution of this issue renders discussion of remaining issues unnecessary.

## DECISION

The MPCA Board's decision to set a 1 million fiber per liter amphibole fiber limit was arbitrary and capricious because the decision was not supported by written findings and reasons. The 1 million fiber per liter limit contained in part I.B. of NPDES permit no. 0055301 is vacated. All other

**416**

portions of permit no. 0055301, being non-controverted, are affirmed. This matter is remanded to the MPCA Board with instructions to conduct a contested case hearing concerning the propriety of an amphibole fiber limit, give the parties, including amicus, an opportunity to be heard, make findings of fact, and give reasons for the ultimate determination.

Affirmed, vacated in part and remanded.