455 N.W.2d 102 (1990)
In the Matter of the Complaint by KANDIYOHI COOPERATIVE ELECTRIC POWER ASSOCIATION against Willmar Municipal Utilities Commission for Extending Electric Facilities in and Adjacent to Westwind Estates.
No. C8-89-2025.
Court of Appeals of Minnesota.
May 8, 1990.
*103 Richard L. Ronning, Willmar City Atty., Willmar, Byron F. Starns, Susan M. Robiner, Leonard, Street & Deinard, Minneapolis, for Relator Willmar Mun. Utilities Com'n.
Harold P. LeVander, Jr., Seth M. Colton, Maun & Simon, St. Paul, William N. Bernard, Bernard & Johnson, Willmar, for Kandiyohi Co-op. Elec. Power Ass'n.
Hubert H. Humphrey, III, Atty. Gen., Margie Hendriksen, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Public Utilities Com'n.
Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Public Service.
Considered and decided by SHORT, P.J., NORTON and MULALLY,[*] JJ.

OPINION
EDWARD D. MULALLY, Judge.
Relator Willmar Municipal Utilities Commission challenges two orders by the Minnesota Public Utilities Commission prohibiting relator from extending electrical service to new customers in an area previously assigned to respondent Kandiyohi Cooperative Power Association but recently annexed by the City of Willmar. We affirm.

FACTS
Relator City of Willmar Municipal Utilities Commission (Willmar) is an electric utility owned by the City of Willmar (city). Respondent Kandiyohi Cooperative Power Association (Kandiyohi) is a rural electric cooperative association whose principal offices are located in the city.
In 1975 and thereafter, Kandiyohi and Willmar were assigned service areas in and around the city, pursuant to orders by the Minnesota Public Utilities Commission (MPUC). The orders resulted in the assignment to both Kandiyohi and Willmar of separate areas within a development known as Westwind Estates.
On or about April 5, 1989, the city annexed property located in Westwind Estates. Several of the annexed lots were located in Kandiyohi's assigned service area.
Although there were not yet any customers in the annexed area, Kandiyohi did have electric facilities bordering the area. Specifically, Kandiyohi had an overhead distribution line running along the south end of Lot 1 Block 1. The line was the type normally used to serve residential customers, although it had not been outfitted with transformers. In addition, Kandiyohi had a three-phase distribution line located at the south boundary of Lot 1 Block 1, capable of serving residential customers or delivering higher grade power. On the date of annexation, Willmar had no electric facilities in or bordering the annexed area.
In June 1989, the new owner of Lot 1 Block 1 began constructing a house. Willmar thereafter extended an electric line into Kandiyohi's assigned area to serve this customer. Willmar did not receive prior consent from Kandiyohi and did not obtain approval from the MPUC. Kandiyohi objected to Willmar's extension of service in its assigned area, and also began preparations to provide temporary power to the new house.
Willmar filed a motion in district court, seeking to prohibit Kandiyohi from extending service to customers in the annexed area without a franchise from the city. On July 14, 1989, the district court issued an order permanently enjoining Kandiyohi from extending electric service within Westwind Estates unless Kandiyohi obtained such a franchise.
Kandiyohi thereafter filed a complaint with the MPUC, alleging that Willmar's extension of services was improper and duplicative. Kandiyohi requested that the MPUC order Willmar to remove its facilities from Kandiyohi's assigned area.
On August 9, 1989, the MPUC issued an order determining that Kandiyohi had facilities *104 in place capable of adequately serving the annexed area. The MPUC concluded that before Willmar could serve the area, it was obligated to negotiate the necessary terms of acquiring Kandiyohi's facilities. The MPUC subsequently issued an order denying reconsideration. Willmar has obtained a writ of certiorari, seeking review of the MPUC's order and order denying reconsideration.

ISSUES
1. Did the MPUC have jurisdiction to determine who should serve the annexed area?
2. Did the MPUC err by determining that the annexed area was already receiving electric service from Kandiyohi?
3. Did the MPUC err by failing to conduct a contested case hearing?

ANALYSIS

I.
In a prior appeal to this court, Kandiyohi and the MPUC sought review of the district court order in this matter. City of Willmar Municipal Utilities Commission v. Kandiyohi Cooperative Power Assoc., 452 N.W.2d 699 (Minn.App.1990). In that opinion, we addressed Willmar's estoppel, jurisdiction, and separation of powers arguments, and determined that the MPUC, rather than the district court, had the authority to determine whether the assigned service area was previously receiving electric service from Kandiyohi.

II.
When statutory interpretation is at issue, * * * a reviewing court is not bound by the agency's determination. An agency decision is entitled to some deference, "where (1) the statutory language is technical in nature, and (2) the agency's interpretation is one of longstanding application."
In re Hibbing Taconite Co., 431 N.W.2d 885, 889 (Minn.App.1988) (citations omitted).
Minnesota electric utilities' assigned service areas are governed by Minn.Stat. §§ 216B.37-.44 (1988). Minn.Stat. § 216B.40 provides for exclusive service rights within an assigned area, and Minn. Stat. § 216B.41 indicates that annexation of any part of an assigned area shall not affect the existing utility's rights to serve that area, unless the municipally owned utility elects to purchase the existing utility's facilities and property as provided in Minn.Stat. § 216B.44.
Minn.Stat. § 216B.44 is the statutory provision which has led to the dispute in the present case.
Notwithstanding the provisions of sections 216B.38 to 216B.42, whenever a municipality which owns and operates an electric utility * * * extends its corporate boundaries through annexation * * * the municipality shall thereafter furnish electric service to those areas unless the area is already receiving electric service from an electric utility, in which event, the municipality may purchase the facilities of the electric utility serving the area.
Id. If the municipality elects to purchase the facilities of the utility serving the area, the parties must arrive at a decision regarding appropriate compensation. If the parties are unable to arrive at an agreement regarding compensation, either party may apply to the MPUC for a hearing to determine the sale terms. Minn.Stat. § 216B.44.
Although Minn.Stat. § 216B.44 provides for a hearing by the MPUC after it is determined that an annexed area was already receiving service, the legislature has not specifically indicated what to do if there is a question whether the area was "receiving electric service" prior to annexation. Here, the parties' dispute centers on the question whether the area annexed by the city was already "receiving electric service" from Kandiyohi.
The legislature has indicated that words and phrases are to be construed "according to their common and approved usage." Minn.Stat. § 645.08(1) (1988). When ambiguous, language within one section of a *105 statute should be construed together with other laws on the same subject. Minn.Stat. § 645.16(5) (1988).
Willmar cites Minn.Stat. § 216B.38, subd. 3, defining "electric service" as
electric service furnished to a customer at retail for ultimate consumption, but does not include wholesale electric energy furnished by an electric utility to another electric utility for resale.
Willmar argues this definition is determinative; because Kandiyohi was not already furnishing electric service to any customers, it was not furnishing electric service to the area. We believe, however, that the above definition of "electric service" was intended to distinguish between retail electric service and wholesale electric service, rather than to indicate that service must be furnished to or received by customers. We also consider the above definition inapplicable because it refers to service to customers while section 216B.44 refers to service to an area.
The MPUC construed the phrase "receiving electric service" as synonymous with a situation where the utility serving the area "has facilities in place capable of providing [the area] with service." This construction is supported by Minn.Stat. § 216B.40, which gives an electric utility the exclusive right to provide "electric service" at retail to "each and every present and future customer in its assigned service area." (Emphasis added.)
The MPUC reasoned that if the statute were interpreted to require actual service to customers within an annexed area, such interpretation would thwart planned investments by the existing utility for anticipated service to the area. The MPUC said:
For this reason, the "actual customer" test proposed by the City is unreasonable. Such a test would allow a utility to make substantial investments to meet the identifiable future needs of its service area, only to have that investment stranded by a municipality's eleventh hour decision to annex and assert its right to provide electric service to an area the utility had arranged to serve.
This analysis is consistent with the legislative intent behind assigning areas to different public utilities.
It is hereby declared to be in the public interest that, in order to encourage the development of coordinated statewide electric service at retail, to eliminate or avoid unnecessary duplication of electric utility facilities, and to promote economical, efficient, and adequate electric service to the public, the state of Minnesota shall be divided into geographic service areas within which a specified electric utility shall provide electric service to customers on an exclusive basis.
Minn.Stat. § 216B.37.
We recognize that although Kandiyohi has facilities capable of serving the annexed area, Willmar need only state a desire to acquire those facilities, discuss terms of acquisition, and seek MPUC intervention if necessary, before Willmar may itself provide service to the area. Issues of the value of Kandiyohi's facilities and issues of future capacity and need may be examined in future compensation proceedings.

III.
Willmar argues that even under the MPUC's construction of the phrase "receiving electric service," a contested case hearing should have been held to determine whether Kandiyohi's facilities were capable of serving the area. Willmar claims two issues of fact should have been resolved in a contested case hearing: (1) whether Kandiyohi's overhead distribution line running along the south line of Lot 1 Block 1, which was not equipped with transformers, was capable of providing service; and (2) whether Kandiyohi's overhead and three-phase distribution lines had the capacity to provide service to the area in the "near" future.
"An agency shall initiate a contested case proceeding when one is required by law." Minn.Stat. § 14.57 (1988). Willmar argues Minn.Rule 7830.3000, subpt. 4 (1989) requires a contested case hearing to determine whether Kandiyohi had facilities capable of serving the annexed area. The *106 provisions of that rule, however, govern procedures for various types of hearings, including contested case hearings, and does not itself entitle Willmar to a contested case hearing.
Willmar also argues that due process requires a record and factual findings sufficient to allow appellate review. See Reserve Mining Co. v. Minnesota Pollution Control Agency, 364 N.W.2d 411, 415 (Minn.App.1985). Willmar claims the MPUC was required to conduct a contested case hearing and make additional findings of fact regarding the capability of Kandiyohi's facilities to serve the assigned area.
The facts regarding the existence of Kandiyohi's facilities are, however, undisputed. As the MPUC concluded in its order denying reconsideration:
Installing transformers on utility poles is a routine, inexpensive, and speedy procedure. It would not be reasonable to require a utility to show transformer-equipped poles to demonstrate its ability to serve an area. To do so would require utilities to either burden ratepayers with the expense of installing unnecessary transformers throughout their service areas or to subject ratepayers to the financial risks of overcapacity when areas included in long-range planning were transferred without compensation to municipal utilities. The Commission concludes the absence of transformers on utility poles at issue does not create a genuine issue of material fact.
* * * * * *
The relevant question is whether the displaced utility has facilities in place capable of serving the area. Answering this question does not require an examination of either utility's long-term capacity needs or of the long-term service needs of the area in question. The only issue is whether the utility the municipality seeks to displace can provide service to the area in the near term while compensation issues are being resolved. Even the City has not suggested that Kandiyohi cannot serve the residential customer currently in the area or other residential customers who may locate in the housing development while compensation issues are being resolved.
* * * * * *
Issues of present and future capacity and present and future need are examined in detail in compensation proceedings.
Willmar also argues a contested case hearing was mandated by Minn.Stat. § 216B.43.
Upon * * * complaint by an affected utility that the provisions of sections 216B.39 to 216B.42 [governing assigned areas] have been violated, the commission shall hold a hearing * * *.
Id. The legislature's use of the term "hearing" may mandate a contested case hearing where material issues of fact remain to be resolved. See In Re People's Cooperative Power Assn., Inc., 447 N.W.2d 11, 13 (Minn.App.1989), pet. for rev. denied (Minn. Jan. 8, 1990). Again, however, we believe a contested case hearing was unnecessary in this case because there were no material facts in dispute.
The method of trial is never required except when facts are in dispute. * * * "Where no genuine or material issue of fact is presented the court or administrative body may pass upon the issues of law after according the parties the right of argument."
People's, 447 N.W.2d at 13 (quoting K. Davis, Administrative Law Text at 159 (3rd Ed.1972) (citation omitted)).
The MPUC had before it all of the facts necessary to determine whether Kandiyohi's facilities were capable of providing electric service to the area, pending a determination by Willmar whether it wished to purchase Kandiyohi's facilities and serve the area. If Willmar decides to purchase Kandiyohi's facilities, a contested case hearing may be necessary to determine who should serve new customers in the area until an agreement is reached regarding the terms and conditions of the purchase. See People's, 447 N.W.2d at 12.

*107 DECISION
The MPUC correctly concluded that the area annexed by the City of Willmar was already receiving electric service from Kandiyohi.
Affirmed.
NOTES
[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.