490 N.W.2d 920 (1992)
In the Matter of the APPLICATIONS FOR AUTHORITY TO PROVIDE ALTERNATIVE OPERATOR SERVICES IN MINNESOTA.
No. C8-92-785.
Court of Appeals of Minnesota.
October 13, 1992.
Review Denied December 15, 1992.
*921 Hubert H. Humphrey, III, Atty. Gen., Julia E. Anderson, Gary R. Cunningham, Sp. Asst. Attys. Gen., St. Paul, for relator Attorney General.
Amy V. Kvalseth, Sp. Asst. Atty. Gen., St. Paul, for relator Dept. of Public Service.
Rosellen M. Condon, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Public Utilities Com'n.
David G. Seykora, William M. Ojile, Jr., Minneapolis, for respondent US West.
*922 Nancy H. Wittebort, Larry Salustro, AT & T Communications of the Midwest, Chicago, Ill., and John B. Van de North, Briggs and Morgan, St. Paul, for respondent AT & T.
Warren R. Spannaus, Amy J. Klobuchar, Kathleen D. Sheehy, Dorsey & Whitney, Minneapolis, and William Levis, MCI Telecommunications Corp., Chicago, Ill., for respondent MCI.
Considered and decided by DAVIES, P.J., and PARKER and RANDALL, JJ.

OPINION
DAVIES, Judge.
The Minnesota Attorney General and Department of Public Service seek review of a final order after reconsideration issued by the respondent Minnesota Public Utilities Commission. The Commission's order concluded that the telephone service known as "alternative operator service" is subject to emerging competition, and therefore is entitled to a reduced level of Commission regulation. We affirm.

FACTS
This appeal concerns telephone service known as "alternative operator service" ("AOS"). AOS is the provision of operator-assisted service for long-distance calls from locations such as hotels, hospitals, pay telephones, and airports. Owners of telephones at these locations contract with companies to provide AOS to transient customers. AOS includes person-to-person, third-party-billed, collect, and credit card calls. Three types of telephone companies provide AOS: interexchange carriers, local exchange companies, and other companies that have been formed solely to provide AOS.
Between May and December 1988, several telephone service providers petitioned the Minnesota Public Utilities Commission ("Commission") for authority to provide AOS. The Commission consolidated the petitions, initiated an investigation, and referred the matter to an Administrative Law Judge for a contested case hearing. One of the issues to be addressed by the ALJ was whether AOS was subject to effective or emerging competition. Pending the ALJ's decision, the Commission granted 20 petitions for interim authority to provide AOS, imposing several conditions upon these providers.
The ALJ conducted a hearing, and issued findings of fact and a recommendation that the Commission find that AOS was subject to emerging competition.
On November 19, 1991, the Commission issued an order, 129 P.U.R.4th 205, concluding, contrary to the ALJ recommendation, that AOS was subject to neither emerging nor effective competition. The Commission ordered that its strict interim conditions should become permanent. In addition, the Commission adopted federal AOS standards and protections, including requirements that certain information about alternative AOS service be provided to phone customers.
AT & T, MCI Companies, US West, and several other companies filed petitions for reconsideration of the Commission's order, arguing that the Commission had erred by concluding that AOS was not subject to emerging competition. The Commission reconsidered and, on March 25, 1992, issued an order after reconsideration, concluding that AOS required limited regulation after all because it was subject to emerging competition. On April 14, 1992, the Department of Public Service filed a petition for reconsideration of the Commission's March 25 order. The Department withdrew its petition, however, on April 24 and, together with the Minnesota Attorney General, filed this appeal.

ISSUES
I. Did the Commission err by failing to make statutorily required findings to support its determination that AOS is subject to emerging competition?
II. Is the Commission's order after reconsideration arbitrary and capricious because the Commission failed to explain its reasons for reversing its initial order?

*923 ANALYSIS

I.
In 1987, the Minnesota legislature enacted laws providing for Commission regulation of three tiers of telephone services: noncompetitive services, services subject to emerging competition, and services subject to effective competition. See 1987 Minn.Laws ch. 340, §§ 1-6 (codified at Minn.Stat. §§ 237.57-62 (1990)). Services which the Commission classifies as subject to effective or emerging competition are exposed to a reduced degree of regulation by the Commission. Minn.Stat. §§ 237.59-60 (1990). The legislature provided:
The classification of a service may not be changed so as to result in lessened regulation unless it is demonstrated by a preponderance of the evidence that the criteria of subdivision 5 have been met.
Minn.Stat. § 237.59, subd. 6.
The criteria of subdivision 5 are:
(1) the number and sizes of alternative providers of service and affiliation to other providers;
(2) the extent to which services are available from alternative providers in the relevant market;
(3) the ability of alternative providers to make functionally equivalent or substitute services readily available at competitive rates, terms, and conditions of service;
(4) the market share, the ability of the market to hold prices close to cost, and other economic measures of market power; and
(5) the necessity of the service to the well-being of the customer.
Id., subd. 5(a).
Relators claim the Commission failed to make the findings mandated by paragraphs (1), (2), and (4). The legislature has stated that, when the Commission is determining whether a service is competitive or subject to emerging competition, the Commission "shall" consider and make findings on the statutory criteria. Id., subd. 5(a). The legislature's use of the term "shall" is mandatory. Minn.Stat. § 645.44, subd. 16 (1990). Accordingly, the Commission is required to make findings on the statutory criteria. Although it did find that 20 companies had interim authority to provide AOS, the Commission made no specific findings on the sizes of the providers or their affiliations to other providers. The Commission briefly discussed the extent to which AOS is available from alternative providers. The Commission finally concluded that increasing consumer sophistication and awareness, along with prohibitions against blocking access to other AOS providers, support a finding that there is a trend toward effective AOS competition.
Relators argue that the Commission's findings erroneously presume that companies will not block access to alternative providers and that AOS providers will comply with the Commission's conditions requiring that information be provided about alternative AOS service. Respondents point out, however, that as of March 1992, federal law requires unblocking of access to alternative AOS providers.[1] In addition, the Commission could properly assume that affected parties will comply with the terms of a prior Commission order.
Relators argue further that the Commission made no findings regarding the market share or other economic measures of market power. The Commission, however, discussed the fact that there has been increasing access to and competition between alternative providers and that, nationally, there has been a proliferation of AOS competitors. The Commission also noted that, in most cases, increased competition will drive prices toward a market basis. In addition, the Commission found that because AOS providers must offer the same rates to transient and non-transient customers, AOS providers probably will not set AOS prices at a level where they could not remain price competitive.
*924 An agency decision unsupported by appropriate findings and conclusions is arbitrary and capricious because the decision "represents the agency's will rather than its judgment". Peoples Natural Gas Co. v. Minnesota Pub. Utils. Comm'n, 342 N.W.2d 348, 352 (Minn.App.1983), pet. for rev. denied (Minn. Apr. 24, 1984). The court stated in Reserve Mining Co. v. Minnesota Pollution Control Agency, 364 N.W.2d 411, 415 (Minn.App.1985), pet. for rev. dismissed (Minn. June 10, 1985):
[A]n agency decision should normally be supported by written findings and reasons, in more than just a conclusory fashion, before expecting the order or decision to be sustained on appeal.
The Reserve Mining court reasoned that an agency decision unsupported by written findings and reasons is inherently arbitrary, unfair to the appealing party, and "highly impractical for the reviewing body." Id. at 414.
The supreme court has stated:
There is no hard-and-fast rule as to how detailed and specific findings should be. * * * [T]he zone of propriety between the extremes of mere conclusion and undue particularity has never been accurately defined. Nevertheless * * * "all of the essential facts upon which the order is based must be found."
The general rule is that an administrative board should state with clarity and completeness the facts and conclusions essential to its decision so that a reviewing court can determine from the record whether the facts furnish justifiable reason for its action. An administrative board should not leave to the court the obligation "to spell out, to argue, to choose between conflicting inferences."
Morey v. School Bd. of Indep. Sch. Dist. No. 492, 271 Minn. 445, 450, 136 N.W.2d 105, 108 (1965) (citations omitted).
In the present case, although the Commission's findings are somewhat meager and conclusory and occasionally refer to the national AOS market, rather than the state market, we conclude the findings are sufficient. The entire record demonstrates the Commission was aware of the statutory criteria and considered all of them when issuing its decision.

II.
In its initial order, the Commission determined that AOS was not subject to effective or emerging competition. The Commission reasoned that AOS was a relatively new service and should be closely regulated because the Commission could not ascertain what might happen in a less regulated context. Specifically, the Commission believed there was insufficient evidence to determine whether access codes would be functionally equivalent for the various AOS providers, and whether functionally equivalent services would be readily available to end-users at competitive rates, terms, and conditions of service. The Commission found a lack of evidence in the record regarding both market share and the ability of the market to hold prices close to cost. This is the extent in its initial order of the Commission's explanation of its reason for deviating from the ALJ's findings and recommendations. A board or commission acts arbitrarily and capriciously by rejecting an ALJ's findings without explanation. See, e.g., Northern Messenger, Inc. v. Airport Couriers, Inc., 376 N.W.2d 285, 290 (Minn.App.1985), pet. for rev. denied (Minn. Jan. 17, 1986); Beaty v. Minnesota Bd. of Teaching, 354 N.W.2d 466, 472 (Minn.App.1984). In Beaty we explained:
When an agency rejects or significantly deviates from the hearing examiner's findings, it should explain, on the record, its reasons for doing so. Failure to do so evidences the agency's desire to exercise its will and not its judgment. A hearing examiner's report and recommendations should not be summarily rejected without reasons.
Beaty, 354 N.W.2d at 472.
In its order after reconsideration, the Commission reversed its own findings, and concluded that AOS was subject to emerging competition. In effect, therefore, the order after reconsideration affirmed the ALJ's findings and decision.
*925 Relators argue that the Commission's complete reversal of its original findings and decision regarding AOS was arbitrary and capricious. Specifically, relators complain that the Commission's failure to explain its reasons for the reversal was arbitrary and capricious. We disagree.
The rules of the Commission provide for reconsideration of a decision. See Minn.R. 7830.4100 (1991). In addition, we have stated that an agency has inherent authority to correct its prior decisions. In re Minn. Pub. Utils. Comm'n Initiation of Summary Investigation, 417 N.W.2d 274, 282 (Minn.App.1987), pet. for rev. denied (Minn. Mar. 18, 1988, and Apr. 4, 1988).
Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it.
Anchor Cas. Co. v. Bongards Co-op. Creamery Ass'n, 253 Minn. 101, 106, 91 N.W.2d 122, 126 (1958).
In the present case, the Commission adequately explained the order after reconsideration. The Commission relied on evidence in the record regarding: (1) a national proliferation of AOS competitors and increased competition, which would be likely to drive prices toward a market basis; (2) federal and state prohibitions against blocking of access to alternative AOS providers; (3) a decrease in consumer complaints regarding AOS; (4) increased consumer awareness of alternative access options; and (5) increased consumer sophistication. The Commission also determined that, although other access codes are not the exact substitute for dialing "0," other access codes, measured by availability, are the functional equivalent of presubscribed AOS.
We conclude the Commission could properly reverse its initial decision upon reconsideration, because the findings support the ultimate decision and it is not arbitrary and capricious.
We also note that the Commission's decision in this case involves a policy decision that is legislative in character. The Commission was deciding the extent of regulation necessary for AOS services and, in so doing, the Commission necessarily considered the interests of the public. Where the Commission is exercising a legislative function, we must affirm unless clear and convincing evidence demonstrates that the Commission abused its discretion. See St. Paul Area Chamber of Commerce v. Minnesota Pub. Serv. Comm'n, 312 Minn. 250, 262, 251 N.W.2d 350, 358 (1977). Such evidence is absent here.
This court has stated:
Although we find independent support for affirming the Commission's authority to regulate service area limitations, we also acknowledge that we would be reluctant at this time to overrule the Commission's judgment on issues of telephone service. Our review of these issues requires caution, in light of the rapid technological growth in the area of telephone service. Decisions made today have the potential for ramifications which may be difficult for us to foresee at this time. During this transition period, it is imperative that we not unduly circumscribe the Commission's authority, lest the entire equal access experiment fail.
In re Minn. Indep. Equal Access Corp. Application for Certificate of Pub. Convenience & Necessity, 477 N.W.2d 516, 521 (Minn.App.1991), pet. for rev. denied (Minn. Jan. 30, 1992). We reaffirm that philosophy.

DECISION
The Commission properly determined that AOS is subject to emerging competition. In light of our decision affirming the Commission, we need not address MCI Companies' alternative arguments.
Affirmed.
PARKER, Judge, dissenting.
I respectfully dissent and would remand to the Commission for further findings in support of its decision. The legislature has directed the Commission to make findings *926 on the statutory criteria when determining whether a telephone service is competitive or subject to emerging competition. Minn. Stat. § 237.59, subd. 5(a) (1990). Although the Commission may have considered the appropriate statutory criteria, I do not believe the findings are sufficient for adequate review. Sufficient factual findings are necessary to ensure that the Commission's decision is not arbitrary and capricious. See Reserve Mining Co. v. Minnesota Pollution Control Agency, 364 N.W.2d 411, 414 (Minn.App.1985).
NOTES
[1] In re Policies and Rules Concerning Operator Services Access and Pay Telephone Compensation, 6 F.C.C.R. 4736 (1991). For example, if access to 10XXX numbers is temporarily blocked, AT & T is required to provide 800 access to callers from aggregator locations.