*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1732**

Tracie Erickson, et al.,
Relators,

vs.

Minnesota Department of Natural Resources,
Respondent.

**Filed July 20, 2015
Reversed
Smith, Judge**

Minnesota Department of Natural Resources

Julie N. Nagorski, HKM, P.A., St. Paul, Minnesota (for relators)

Lori Swanson, Attorney General, Karen D. Olson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We reverse the department of natural resources' decision that relators' silica sand-mining operation is subject to the setback-permit provision of Minn. Stat. § 103G.217 (2014) because relators' silica sand-mining operation is not a "new project" within the

meaning of the statute and because there is no indication that any environmental review at the site had been noticed for public comment after April 30, 2013.

## FACTS

In January 1992, Alan Thorson petitioned Houston County for a conditional use permit (CUP) to allow him to mine silica sand on his property. At a public hearing, he told the county planning commission that he was seeking to bid on a contract for a bridge-construction project, and that, if successful, he would use the CUP to extract 8,000-10,000 cubic yards of sand for the bridge and "continue to use the pit after completion of the bridge." Although some neighbors raised aesthetic concerns, the planning commission unanimously recommended that the county board of commissioners issue the CUP. The county board approved the CUP, subject to the condition that the sand mining operation be "permitted for 5 years subject to review for possible extension beyond the 5 years." The CUP did not state a limit on the volume of sand that could be extracted from the site. The county "extended" the CUP in 1997, 2003, and 2008.

Relators Tracie and Michelle Erickson purchased the property in 2009. The Ericksons contracted with Minnesota Sands, LLC, to extract 2 million cubic yards of sand and process the sand onsite. Responding to concerns that activities on the Ericksons' property had "materially changed," the county board held a hearing on June 19, 2012. The board struggled to establish a baseline for determining whether there had in fact been a material change in the sand mine's operations in light of the lack of documentation regarding activities at the mine at the time of the CUP issuance in 1992 and in each of its "renewal years." A representative of neighboring property owners

2

testified that "his clients purchased property with a belief that an estimated 10,000 cubic yards of material would be removed," and that the proposed increase to 2 million cubic yards was "a dramatic change and a change in the scope of the operation."

In July 2012, the county enacted a moratorium on "the issuance of any conditional use permit for new silica sand mining," "the conversion of existing non-silica sand mining operations into silica sand-mining operations," and all sand processing operations "not expressly authorized by the terms of an existing conditional use permit." The moratorium was later extended to 2014. The county's environmental services director later recalled that the ordinance was perceived as necessary to address the problem of "operators . . . attempting to utilize old pre-existing permits for small construction sand or shale quarry operations to end-run the moratorium."

On July 10, 2012, the county board voted to order that sand-mining and sand-processing work on the Erickson property be stopped, based on its finding that the Ericksons' arrangement with Minnesota Sands included "screening and crushing . . . which is an expansion of the original CUP," and its conclusion that "an [environmental assessment worksheet] should have been required" in 1992 and "this requirement has not been fulfilled." On August 7, 2012, the county board voted to have an environmental assessment worksheet (EAW) completed regarding sand-mining operations on the Erickson property. The Ericksons and Minnesota Sands unsuccessfully moved the district court for injunctive relief.

In November 2012, after receiving a letter from the county notifying them that the CUP would expire on January 8, 2013, the Ericksons requested another five-year

3

extension of their original CUP. The county delayed considering the extension, pending completion of the EAW.

The Ericksons and Minnesota Sands terminated their agreement in September 2013, and the Ericksons provided a copy of the termination agreement to the county on February 27, 2014. The county then agreed to consider the Ericksons' application for extension of the original CUP because "the project to which environmental review attached has been abandoned." As part of the county board's consideration of the CUP extension, the county zoning administrator noted that extension approval delayed past the "exact 5 year renewal deadline . . . happens quite often" in the county and that mines were allowed to continue operating under a prior CUP during such a delay. On June 24, 2014, the county granted the Ericksons' request to extend their CUP, finding that the EAW requirement did not apply to the "limited mining allowed under the . . . 1992 CUP, as renewed," and that the county's "moratorium involving silica sand, as amended, does not apply to the proposed renewal because it is not new mining." The county added, however, a condition expressly limiting the extraction to 10,000 cubic yards per year.

Respondent Minnesota Department of Natural Resources (DNR) sent a letter to the Ericksons to inform them of changes in state law that DNR contended would require the Ericksons to obtain a trout stream setback permit before resuming silica sand mining. DNR also wrote to the county zoning administrator, requesting confirmation that the county had not extended the Ericksons' CUP until after its expiration date. The zoning administrator replied that, in the view of the county and in light of its practices and its

4

interpretation of state statutes, the CUP had not expired because the Ericksons' had not violated any of the CUP's conditions and had timely filed an extension request.

Notwithstanding the zoning administrator's opinion, DNR notified the Ericksons that, because their 1992 CUP had lapsed, the mine "qualifies as a new project and is subject to the setback permit requirements." DNR ordered the Ericksons to cease mining until they obtained the setback permit. On September 11, 2014, DNR issued its final decision, rejecting the Ericksons' and the county's characterization of the CUP extension and reiterating its finding that the Ericksons' mine was a "new project" subject to the setback permit requirement.

**D E C I S I O N**

**I.**

**A.      Standard of Review**

The Ericksons challenge DNR's determination that their sand mine is subject to the setback-permit requirement in Minn. Stat. § 103G.217. When reviewing an agency's interpretation of a statute that it is charged with administering, we generally defer to the agency when its determination "involv[es] application of an agency's expertise, technical training, and experience." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 463-64 (Minn. 2002). But we review de novo the determination of whether an agency has the statutory authority to act at all in a particular case. *In re Hubbard*, 778 N.W.2d 313, 318 (Minn. 2010); *see also id.* at 318 n.4 (expressly rejecting an agency's argument that judicial deference should extend to "the threshold question of whether the legislature has granted an agency the authority to take

5

the action at issue"). We still defer, however, to an agency's factual findings, provided that they are supported by substantial evidence. *Saif Food Mkt. v. Comm'r, State, Dep't of Health*, 664 N.W.2d 428, 430 (Minn. App. 2003).

Minnesota law requires a trout stream setback permit for any silica sand mine located within the DNR Paleozoic plateau ecological section and within a mile of a designated trout stream. Minn. Stat. § 103G.217(b). But the permit requirement applies only to "new silica sand mining projects and projects for which environmental review documents have been noticed for public comments after April 30, 2013." 2013 Minn. Laws ch. 114, art. 4, § 66, at 1732.

Although the parties implicitly agree as to the generally applicable standards of review, they nonetheless disagree about which standard applies here. The Ericksons contend that our review is de novo because the outcome depends entirely on our interpretation of the legislature's statement limiting application of the setback-permit statute to new silica sand mining projects. *See* 2013 Minn. Laws ch. 114, art. 4, § 66, at 1732. DNR concedes that its authority applies only to new projects and projects with properly noticed environmental review, but contends that the determination of what constitutes a new silica sand mining project is a question of fact, and that its determination is driven by application of its expertise and is therefore subject to this court's deference. But no issues of fact are disputed here. The parties agree that the Ericksons' sand mine is a silica sand mine, that it is located within the DNR Paleozoic plateau ecological section, and that it is located within a mile of a designated trout stream. They also agree about the nature of the activities occurring and proposed on the

6

Ericksons' property and the dates of events surrounding their CUP. What the parties disagree about is the meaning of those events, namely, whether the county's delay in processing the extension of their CUP means that the CUP lapsed, and whether any such lapse in the CUP makes the Ericksons' post-extension sand mining a new silica sand mining project subject to the setback permit requirement in Minn. Stat. § 103G.217. When the facts are thus undisputed, the question of whether they trigger a particular statute is a question of law, reviewed de novo. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008). Thus, our standard of review is de novo.

### B. "New Project"

We turn next to determining whether the Ericksons' sand mine is a "new project" within the ambit of Minn. Stat. § 103G.217. We interpret statutes to give effect to the intent of the legislature. Minn. Stat. § 645.16 (2014). "If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. If a statute is ambiguous, we apply other canons of construction to discern the legislature's intent." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010) (citation omitted). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). The unambiguous, plain meaning of words in statutes may be determined by reference to dictionaries. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014).

### 1. Project distinct from CUP

The Ericksons contend that DNR's determination that their sand mine was a "new project" was erroneous because it was based on DNR's erroneous beliefs that the Ericksons' CUP had lapsed in January 2013 and that the lapse means that the county's 2014 granting of an extension was effectively a new CUP for a new silica sand mining project. To determine whether the Ericksons' mine is a *new* project, we must determine the scope of their "project" and then determine if it is "new." For the purposes of Minn. Stat. § 103G.217, a project is defined as "a specific plan, contiguous activity, proposal, or design necessary to accomplish a goal as defined by the local government unit." Minn. Stat. § 103G.005, subd. 14d (2014); *see also id.*, subd. 1 (2014) (applying the definition to all sections in chapter 103G). An "activity" is "[t]he collective acts of one person or of two or more people engaged in a common enterprise." *Black's Law Dictionary* 38 (9th ed. 2009). Something is "new" if it has "recently come into being" or is "[b]eginning afresh." *Id.* at 1140-41.

Applying these definitions, the Ericksons' silica sand mine is not a new silica sand mining project. The activity occurring at the Ericksons' property is the mining of silica sand for sale. This focus on the silica sand-mining nature of the activity is reinforced by the legislature's contextual use when providing that Minn. Stat. § 103G.217 applies only to new *silica sand mining* projects, *see* 2013 Minn. Laws ch. 114, art. 4, § 66, at 1732, not to new projects generally. The Ericksons' sand-mining activity is not of recent origin, as it formed the basis for the original CUP in 1992. The owners of the land have also repeatedly sought extension of the CUP, demonstrating that sand-mining activity at

8

the site did not begin afresh in 2014. Although the Ericksons' plans for the amount of sand to be extracted and the end uses of the sand have varied,[1] the nature of the activity at the property has not. The acts undertaken—extracting sand for sale—define the scope of the Ericksons' project, and the undisputed fact that this activity has taken place for more than 20 years means it is not new.

DNR argues, however, that the scope of a "project" in environmental-policy matters is determined by the scope of governmental action, meaning that the time limits on the Ericksons' CUP define the scope of their project. But DNR's argument is contrary to both the plain meaning of the words in the statute defining "project" and to DNR's own definition of "project" for environmental-policy matters, which provides, "The determination of whether a project requires environmental documents shall be made by reference to the *physical activity to be undertaken and not to the governmental process of approving the project*." Minn. R. 4410.0200, subp. 65 (2013) (emphasis added). DNR's and Ericksons' competing characterizations of the effect of the county's 2014 granting of the Ericksons' request for a CUP extension are thus beside the point, as the activity defines the scope of a project, not the CUP.

---

[1] DNR implies that the original end use of the Ericksons' sand—construction of a bridge—delimits the scope of their project. But this interpretation would lead to absurd results, as a sand-mine operator could be required to obtain a new permit each time it had a new customer for its sand. *See* Minn. Stat. § 645.17(1) (2014) (mandating the presumption that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable").

## 2. CUP not violated

Even if the Ericksons' CUP defined the scope of the project under Minn. Stat. § 103G.217, the purported expiration of the CUP did not render their sand mine a new silica sand mining project. DNR insists that it is not bound by the county's characterization of the county's 2014 action as an "extension" or "renewal" of an existing CUP. But just as we would defer to DNR's characterization of technical terms in its area of expertise, *see In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001), we also defer to the county's interpretation of terms relevant to its areas of specialized authority. The decision to grant a CUP lies with the county board. Minn. Stat. § 394.301, subds. 1, 2 (2014). Once granted, the CUP "shall remain in effect for so long as the conditions agreed upon are observed." *Id.*, subd. 3 (2014).

DNR argues that the five-year renewal requirement in the Ericksons' CUP was a condition, the violation of which required that a new CUP be issued in 2014. Supported by the county, the Ericksons respond that their timely request for extension of the CUP means that they did not violate the five-year-renewal condition. Whether a CUP condition has been violated is a finding of fact to which we must defer unless it is clearly erroneous. *See, e.g.*, *NBZ Enters., Inc. v. City of Shakopee*, 489 N.W.2d 531, 534 (Minn. App. 1992), *review denied* (Minn. Sept. 30, 1992). Here, the county has consistently stated that the Ericksons' timely request to extend the CUP conformed to local practices and that the county therefore did not view the delay in processing their extension request as a violation of the CUP condition requiring a five-year extension. Since DNR points to

10

no facts contradicting the county's implicit factual finding or legal authority invalidating that determination as a matter of law, its assertion that the delay amounted to expiration of the CUP does not render the county's finding clearly erroneous. Thus, we conclude that, even if the scope of the Ericksons' project was defined by the continuation of their 1992 CUP, the county's 2014 action was an extension rather than an issuance of a new CUP, and the Ericksons' sand mine was therefore not a new project within the ambit of Minn. Stat. § 103G.217.

### 3. Remedial legislative intent inapplicable

DNR also argues that multiple projects may exist at a single mine and we should therefore consider the legislature's environmental-protection purposes and apply a definition of "new" that applies to projects established at previously existing mines. But DNR offers no support for its contention that multiple definitions of "new" exist such that the legislature's limitation on DNR's authority is ambiguous. Although "[w]e construe statutes to effect their essential purpose," we "will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007). The legislature has expressly provided that the setback-permit requirement in Minn. Stat. § 103G.217 applies only to new silica sand mining projects, *see* 2013 Minn. Laws ch. 114, art. 4, § 66, at 1732, not to any projects which may impact the environment generally or even designated trout streams in particular. We therefore conclude that the DNR erred by determining that the Ericksons' sand mine is a "new silica sand mining project" subject to the setback-permit requirement in Minn. Stat. § 103G.217.

11

C.      **"Publicly Noticed Environmental Review"**

DNR alternatively argues that the Ericksons' mine is subject to the setback-permit requirement because the proposed expansion of their mining operation to extract 2 million cubic yards of sand was the subject of a publicly noticed environmental review, specifically, the county's later-abandoned order that an EAW be completed regarding the Ericksons' mine.  But we will reverse as arbitrary and capricious an agency decision that is presented without reasons "because it represents the agency's will rather than its judgment."  *Reserve Mining Co. v. Minn. Pollution Control Agency*, 364 N.W.2d 411, 414 (Minn. App. 1985) (quotation omitted), *review dismissed* (Minn. June 10, 1985).  Here, although DNR mentioned the county's EAW order in its decision, it did not identify that EAW order as a reason supporting its determination that the Ericksons' mine was subject to the setback-permit requirement in Minn. Stat. § 103G.217.

Even if DNR had relied upon the county's EAW order as the reason for its decision, DNR cites no authority that a county's EAW order, issued verbally at a county board meeting, meets the requirement that the Ericksons' mine be a "project[] for which environmental review documents have been noticed for public comments after April 30, 2013."  2013 Minn. Laws ch. 114, art. 4, § 66, at 1732.  To the contrary, DNR offers no evidence (and the record contains no indication) that any environmental review documents were created in response to the county's EAW order, let alone that they were noticed for public comments.  *Cf.* Minn. Stat. § 116D.04, subd. 2a(b) (2014) (requiring that a "responsible government unit shall promptly publish notice of the completion of an environmental assessment worksheet by publishing the notice" in a newspaper, on an

12

official web site, or by other authorized means).  Accordingly, we conclude that the DNR

erred by determining that the Ericksons' sand mine is subject to the setback-permit

requirement in Minn. Stat. § 103G.217, and we reverse the DNR's decision.[2]

**Reversed.**

---

[2] We note that this decision is based on the limited extraction of up to 10,000 cubic yards of sand per year and that nothing in this opinion addresses whether a "new silica sand mining project" would be present if the scope of sand mining on the Ericksons' property were to be expanded in the future.