Matthew M. Levy, J.
This is an article 78 proceeding to review the determination of the State Liquor Authority disapproving the petitioner’s application in 1964 for a restaurant liquor license. The basis of the respondent’s disapproval was twofold: (1) alleged deliberate misrepresentations made by Yetta Cohn, the president and sole stockholder of the present petitioner, in connection with her applications in 1962 and 1963 for approval of corporate changes involving another licensee, in which inaccurate statements were made as to the sources of her funds and the amount of shares to be purchased; and (2) alleged deliberate concealment in such licensee’s application in 1962 in respect of her employment some years prior thereto by the New York City Police Department.
That licensee was a corporation which was the holder, since 1958, of restaurant liquor licenses for other premises. On April 23, 1962 Yetta Cohn and others filed an application with the respondent seeking the approval of the acquisition by them of shares of stock of the corporate business. In accordance with the procedure established by the respondent, Cohn was required to file a statement of her occupation and employment in the “ prior ten years ” — that is, for the period from April 23, 1952 to that date in 1962. Cohn furnished the occupational record and gave other information (hereinafter referred to) as required. On the basis thereof the respondent approved the application.
Subsequently, the respondent ascertained that Cohn made some misstatements. In her occupational record in the 1962 application Cohn did not set forth that, from June 5, 1940 to March 31, 1953, she had been a policewoman attached to the Police Department of the City of New York. The respondent charges that Cohn intentionally concealed her employment with the Police Department for the one year envisaged in the first of the 10-year (1952-1962) period. The respondent asserts that *438 Cohn resigned in March, 1953 following an investigation made by the Police Department, which allegedly showed that she had once been a member of the Communist party, and had associated with Communists, and that at a hearing held by the Police Department, she had refused to name about 15 persons who attended a New Year’s party at her home — all or many of them being Communists.
The petitioner alleges that Cohn did not knowingly suppress and conceal facts relating to her employment with the New York City Police Department. In her affidavit annexed to the petition she states that her Police Department employment during 1952-1953 (being the first portion of the 10-year period prior to the 1962 application) was inadvertently omitted. In her reply affidavit, Cohn states that her employment therein was highly commendable and that she received two excellent police duty citations during her service of 12% years. Cohn states further that she resigned from the Police Department on her own volition and for no other reason or pressure of any kind.; that about six weeks before her resignation in early 1953, she was called in for questioning by one of the Chief Inspectors for two hours; that no charges of any kind were filed against her, nor was she removed or asked to resign; that the matters upon which she was questioned dealt with her residences between the years 1930 to 1940, her relationship with an actress, her political involvements during those years, and a matter concerning a New Year’s party that was had at her apartment where over 100 persons attended during the various hours of the morning.
The petitioner argues that Cohn — called upon to give her employment record for the past 10 years only, i.e., for the interval from 1952 to 1962' — innocently omitted her Police Department employment in the 1952-1953 period because she believed that she had resigned from the department in March 1952 (not 1953) and hence it was beyond the 10-year term prior to the April, 1962 application. On the other hand, argues the respondent, the omission was not unintentional, for the listing of such employment would reveal Cohn’s questioning by one of the Chief Inspectors of the Police Department and of her Communist associations and her resignation under fire; and that might have had an adverse effect upon the application for a corporate change. It is reasonable to assume, says the respondent, that the omission was purposeful, calculated to conceal from the respondent the circumstances of her resignation from the Police Department,
There can be no dispute, as pointed out by the respondent, that the State Liquor Authority has the function, power and *439 duty to “ issue or refuse to issue any license or permit provided for in this chapter ’ ’ (Alcoholic Beverage Control Law, § 17, subd. 1). On the other hand, there can also be no dispute that 1 ‘ any person may make an application * * * for a license to sell liquor at retail to be consumed on the premises where sold, and such licenses shall be issued to all applicants except for good cause shown ” (§ 64, subd. 1).
That the applicant’s sole party in interest has had Communist affiliations is not a valid ground for denying the license (cf. Matter of Davis v. Hults, 24 Misc 2d 954). But I hold that proper inquiries may be made by the respondent as to an applicant’s prior employment record and the financial transactions involved in his becoming a liquor licensee or a shareholder cf one. For, in my opinion, the license may be denied by the respondent to an applicant who is not a fit person (cf. Matter of Barton Trucking Corp. v. O’Connell, 7 N Y 2d 299, 308, 309), and such inquiries are appropriate in order that the respondent may ascertain such fitness or lack of it. It follows, of course, that a true application must be made to the administrative agency which is to act thereon (cf. Federal Communications Comm. v. WOKO, 329 U. S. 223), and that an applicant who makes a deliberate misrepresentation of or knowingly conceals a material fact in order to obtain the license is not such a fit person (Matter of Berlingieri v. O’Connell, 279 App. Div. 735, affd. 305 N. Y. 776), or so the administrative tribunal may determine. I hold also that the fact that it is with respect to a prior application that such willful misrepresentation or concealment existed (and not to the instant one) does not vitiate the effect of such conduct so as to preclude a determination of unfitness as to the present application.
But the respondent argues further that even an 1 ‘ innocent false statement ” by the applicant amounts to “ a constructive fraud ’ ’ justifying denial of the present application, citing Wallace v. Ford (44 Misc 2d 313, 317). This case, thus relied upon by the respondent, is not helpful. In my opinion, the subject matter of the alleged false statements and concealments, and the willfullness and materiality thereof, are relevant considerations.
Such factors may be obvious on the papers in some eases; in other situations, that may not be clear. There appears to have been no hearing held by the respondent in the matter at bar. The denial of the license was an administrative determination. I mention this — mot with the thought that a hearing there is required to be had — but because, after studying the voluminous documents submitted to me, I have come to the conclusion that *440 whether the denial of the license in the instant case was or was not arbitrary and capricious (CPLR. 7803, subd. 3) raises issues of fact which should be resolved upon a trial (CPLR 7804, subd. [h]).
The respondent’s procedure also' required that response be made by the stockholder seeking to purchase shares of a corporate liquor licensee to inquiry by the respondent as to the source of the funds being invested in the business. Cohn was interviewed in 1962 as to that and she stated that she was buying 13 shares on an investment of $11,000. Of this sum $6,000 was to be obtained from M-Y Homes, Inc., of which she was an officer, and the balance was to be gotten by closing out a brokerage account. In 1963, a second corporate change application was filed by this licensee for the approval of the acquisition of additional shares by Cohn. There she stated she was to have an aggregate of 22 shares — that is, in effect, she was to acquire 9 more shares. In 1963, the representation was that these new shares were being purchased for $9,000. The 1962 and 1963 applications were approved.
The respondent alleges that these statements were misrepresentations in that in 1962 Cohn acquired 11 shares and not 13, for which she paid approximately $7,000 which she obtained from M-Y Homes, Inc., and in that in 1963 Cohn acquired 11 shares and not 9 for which she paid $13,000. These alleged misrepresentations are denied by Cohn. She explains these discrepancies in the following way: The total number of shares involved in the two transactions was 22 — both by way of statement to the respondent and by way of actual fact. The total amount paid for the 22 shares was thus $20,000 — similarly both in respect of her statement and of fact. Also, in her reply affidavit, Cohn asserts that with respect to the source of the funds invested by her in 1962, if there is any discrepancy, the statement made “was through mere inadvertence and it was not in fact fraudulent or concealed as allegedly charged ”. She states that the “ Personal History Sheet ”, Exhibit C annexed to respondent’s answer, was signed by her in blank after the respondent’s investigator told her what he would fill in, and, says Cohn, the answers inserted did not set forth what she told the investigator and what he “noted” “on a separate sheet of paper in pencil.”
It must be kept in mind that the present proceeding does not involve a revocation of the 1962 or 1963 certificates of approval granted by the respondent on the basis of the representations then made by the applicant. In such circumstance, if the statements were as to material matters, then Cohn’s intent in making *441 them would be irrelevant. If in fact untrue, the respondent might be justified, upon due notice and hearing, in concluding that the approvals should be cancelled. That is not before me for determination, and I do not pass upon it. But, in the proceeding at bar, the issue is one of fitness of the applicant to obtain a license, and the objection is that statements that its stockholder had previously made in respect of other matters were false — thus showing that she and her corporate alter ego are unfit. In such case, whether the purpose of her statements or omission of them was or was not deliberate and intentional is quite relevant.
Thus, in respect of the financial aspects alleged to have been falsified, a hearing, too, is in order, as hereinbefore directed on another phase of this case.
Settle order accordingly, providing for the filing of a note of issue and the placing of the cause upon the appropriate day calendar of Special and Trial Term, Part I.