In the Matter of the Application of NORTHWESTERN BELL TELEPHONE COMPANY, MINNEAPOLIS, Minnesota, for Authority to Change its Schedule of Telephone Rates for Customers within the State of Minnesota.

Nos. C6–85–278, C0–85–289 and C3–85–304.

Supreme Court of Minnesota.

May 9, 1986.

Hubert H. Humphrey, III, Atty. Gen., Lisa A. Rotenberg and Allen E. Giles, Sp. Assts., St. Paul, for appellant.

Carla C. Kjellberg, Minneapolis, for MPIRG.

Evan J. Henry, Winona, Lawrence R. McDonough, Galen Robinson, St. Cloud, Area Legal Services, Little Falls, for St. Cloud Area Ratepayers.

SIMONETT, Justice.

These appeals question whether the Public Utilities Commission properly denied costs to several intervenors in a telephone rate case because their participation had not "materially assisted" the Commission in its deliberations. The court of appeals, in a split decision, reversed the denial and remanded to the Commission to formulate appropriate standards and make adequate findings. We affirm in part and reverse in part the court of appeals' decision.

In the fall of 1983 Northwestern Bell Telephone Company filed a petition for a general rate increase. The matter was set for a contested case hearing, and 18 parties were granted leave to intervene. Public hearings were held throughout the state during the first 2 months of 1984 and evidentiary hearings were held in January, March, and April. In May 1984, after the contested case hearing record was virtually completed, the Minnesota Legislature enacted a statute providing for intervenor reimbursement as follows:

> The commission may order a telephone company to pay all or a portion of a party's intervention costs not to exceed $20,000 per intervention in any general rate case when the commission finds that the intervenor has *materially assisted* the commission's deliberation and the intervenor has *insufficient financial resources* to afford the costs of intervention. No entity which provides telephone services of any kind is eligible for reimbursement of intervention costs under this subdivision.

Minn.Stat. § 237.075, subd. 10 (1984) (emphasis added). By 1984 Minn.Laws ch. 611, § 2, "This act is effective the day after final enactment [May 2, 1984] and shall apply to expenses incurred after the effective date."

Pursuant to this new legislation, after the final order in the rate case was made, six intervenors applied to the Commission for their costs and expenses incurred after May 3, 1984. All six applications were denied. Three of the intervenors, Minnesota Public Interest Research Group (MPIRG), St. Cloud Area Ratepayers (SCAR), and Evan J. Henry appealed to the court of appeals, which reversed the Commission's denial and remanded for further proceedings. *In re the Application of Northwestern Bell Telephone Co.*, 374 N.W.2d 758 (Minn.Ct.App.1985). We granted the Commission's petition for further review.

In determining whether an intervenor had rendered material assistance, the Commission, in its order dated November 13, 1984, employed three criteria, namely, whether the intervenor prevailed on its position in whole or in part; whether the intervenor's contributions were unique, *i.e.*, different from or not duplicative of those of other parties; and whether the matters raised were not of common knowledge. Applying these criteria to the record at hand, the Commission said it "must then subjectively judge the degree of success and the parties' contribution[s] to the Commission's reasoning leading to the results obtained."

The Commission noted that four intervenors, including MPIRG and SCAR, had all raised the issue of customer ability to pay and the effect of the proposed rate increases on universal access and had argued generally that Northwestern Bell's proposals would cause serious hardship for residential customers. While conceding the concerns expressed by MPIRG and SCAR were important and helpful, the Commission stated there was nothing unique about how these concerns were

presented. The issues raised by the six intervenors, said the Commission, were "matters of common knowledge or were addressed by other parties." Further, noted the Commission, "None of these parties prevailed completely in obtaining the relief sought, especially when they urged the Commission to dismiss the rate increase case in its entirety." Thus, the Commission concluded, the participation of none of the parties "was a significantly persuasive factor in [the Commission's] reaching its conclusions in this case." As for Evan J. Henry, who had raised accounting and rate design issues and had also urged dismissal of the entire proceedings, the Commission simply said he was not entitled to reimbursement "because Mr. Henry * * * prevailed on none of his claims."

The court of appeals held that while the Commission might consider whether an intervenor had prevailed, it was error to make it the sole determinative factor, as was done in Mr. Henry's case. As for MPIRG and SCAR, the court felt the Commission was saying that if more than one party addressed an issue none could be reimbursed, which would be arbitrary; and the court further felt the Commission's findings inadequately explained what it meant by saying intervenors had raised issues of only common knowledge. Consequently, the court of appeals remanded for the Commission to develop "articulable standards" and adequate findings.

Two issues are presented: (1) Did the Commission employ appropriate criteria in its interpretation of the statutory phrase "materially assisted"? and (2) Assuming the adequacy of the Commission's criteria, did the Commission err in its determination that under the facts of this case none of the intervenors had been of material assistance to the Commission in its deliberations?

## I.

■ If the intervenor "has materially assisted the commission's deliberation and the intervenor has insufficient financial resources," the Commission may reimburse the intervenor. While this two-pronged statutory test for reimbursement seems forthright enough, it requires, as the Commission discovered, interpretation. Consequently, the Commission discussed the criteria it would use in applying the statutory test.

Establishing criteria or standards for implementing a statutory test is a matter of agency discretion. See MPIRG v. Minnesota Environmental Quality Council, 306 Minn. 370, 382, 237 N.W.2d 375, 382 (1975) (interpretation of the statutory phrase "need for environmental review" is within agency discretion). The role of the court is limited to whether, on review, the criteria or standards are reasonable and further the purpose of the statute. See H.M. Hart, Jr. & A.M. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1345–47 (1958).

■ Here, in determining whether it had received material assistance, the Commission considered whether the intervenors prevailed, whether the issues raised by intervenors were unique, and whether the intervenors raised matters of more than common knowledge. The Commission apparently felt an intervenor should not be reimbursed for simply riding on someone else's coattails. Surely, the selection of these criteria is well within the exercise of the Commission's discretion. All three criteria are reasonable and further the purposes of the statute.

At oral argument the Commission advised us that it was now in the process of promulgating a rule establishing standards for reimbursement.[1] Presumably in the

---

1. If an agency makes a "statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by it * * *," such a statement would be a rule. Minn.Stat. § 14.02, subd. 4 (Supp.1985). To be valid, any rule, including an interpretative rule, must be promulgated pursu-

ant to the rulemaking requirements of our Administrative Procedure Act. See Cable Communications Board v. Nor-West Cable Communications Partnership, 356 N.W.2d 658, 667 (Minn. 1984). On the other hand, if an agency's interpretation of a statute it is administering corresponds with the plain meaning of the statute, no

rulemaking proceedings, which will cover both prongs of the statutory test, the Commission will be able to consider a variety of criteria and fashion a rule selecting and using those criteria which best further the purpose of the statute.

While prevailing on an issue may well be a factor in granting reimbursement, to require that an intervenor must prevail to be reimbursed, as the Commission appears to have done in the case of one of the intervenors, is unreasonable. We agree with the court of appeals that to prevail is not the sine qua non for reimbursement, but only one of a number of criteria to be considered. The Commission got sidetracked with its reliance, "[b]y analogy," on *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), wherein the United States Supreme Court, in determining an award of attorney fees under 42 U.S.C. § 1988 (1982), essentially required the plaintiff to prevail. *Hensley* was dealing with an entirely different litigation situation and with a federal statute which explicitly refers to a "prevailing party." Minn.Stat. § 237.075, subd. 10, on the other hand, deals with "assistance" rendered by a utility rate case intervenor. Indeed, the focus of our state statute is not so much on who wins or loses but on the Commission's *deliberations, i.e.,* on whether intervenor has helped the Commission in deciding who wins or loses. We can conceive of situations where a nonprevailing intervenor might nevertheless be of help to the Commission in illuminating a troublesome issue or in providing useful data or in some other way.

One last observation. By saying it must "subjectively judge," the Commission seemed to assign itself an overly introspective standard. True, the Commissioners must "make up their minds," but they do so based on objective criteria applied to the facts and circumstances of the record at hand. Their discretion is not unlimited and must be explained. By over-emphasizing the "subjectiveness" of their decisionmaking process, the Commission may fall into the trap, as it did here, of arguing that even if intervenors had established a case of material assistance, the Commission would not have been required to award reimbursement because the statute says only that reimbursement "may" be awarded. At oral argument, the Commission's counsel abandoned this argument, conceding it was incorrect and would, if logically extended, insulate agency caprice from judicial review.

## II.

We next consider whether, on the facts of this case, the Commission properly denied the three intervenors' claims for reimbursement. As to Evan J. Henry, the Commission erroneously looked no further than Henry's failure to prevail on the issues he addressed. We remand, as did the court of appeals, Henry's reimbursement request for reconsideration.[2]

We disagree with the court of appeals on the reimbursement requests of MPIRG and SCAR and affirm the Commission's denial of those applications. It

---

rulemaking is involved. *See id.* Sometimes it is a thin line between whether an agency statement is or is not a rule.

Here, the Commission did not submit its statement of criteria to the rulemaking process, but no one in this appeal questions its failure to do so, so we do not have the issue before us. At oral argument, the Commission said there was not time to promulgate a rule but that it has now instituted the rulemaking procedure to establish a rule on intervenor reimbursement. In its order denying reimbursement, the Commission said its denial was based on the particular facts of the case "and is not intended to be precedent for future proceedings." For a dis-

cussion of the need for an administrative agency, in certain circumstances, to have the discretion to proceed by rulemaking or adjudication or a combination of both, see 2 K. Davis, Administrative Law Treatise § 7.25 (1979).

2. Mr. Henry's request for reimbursement includes expenses incurred prior to May 3, 1984, the effective date of the reimbursement statute. We agree with the court of appeals' holding that the Commission had no authority to award reimbursement for expenses prior to May 3. Moreover, in remanding Mr. Henry's application, we are not commenting on the merits of what remains of his reimbursement request.

seems to us a fair reading of the order of November 13, 1984, shows the Commission carefully reviewed the record and concluded neither MPIRG nor SCAR's participation had been a "significantly persuasive factor in [the Commission] reaching its conclusions in this case." This kind of determination, which involves some balancing of interests, is more like a legislative finding, to which we apply the arbitrary and capricious standard of judicial review. Therefore, we look to see if the Commission decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citing L. Jaffe, Judicial Control of Administrative Action 182 (1965)); *see Manufactured Housing Institute v. Pettersen,* 347 N.W.2d 238, 244 (Minn.1984) (does the agency action have a rational basis?).

■ Here the Commission solicited reimbursement recommendations from the Department of Public Services and the Residential Utilities Division of the Office of Attorney General.[3] It heard oral argument. It discussed the matter for 2 days, and we have a transcript of that discussion. It seems to us the fair import of the Commission's decision is that while MPIRG and SCAR's participation was helpful, it was not "materially" so. In its 102-page rate-making order of July 27, 1984, the Commission discussed in detail each intervenor's contribution to each issue, so that we do not think it was necessary for the Commission in its November 13 order denying reimbursement to make any more elaborate "findings" than it did.

■ One other factor should be mentioned. Minn.Stat. § 237.075, subd. 10, applies only to an intervenor's participation and expenses after May 3, 1984. By that date, the contested case hearing was practically completed. The only proceedings occurring after May 3 in which intervenors participated were those involving several motions to dismiss for lack of evidence on the effect of Northwestern Bell's corporate restructuring. Yet intervenors, in support of their request for expenses incurred after May 3, repeatedly refer to their contributions made before May 3 as having "materially assisted" the Commission. In other words, intervenors seek reimbursement for costs which are largely unrelated to the costs of providing the alleged material assistance. Due to its chronology, this is a poor case to consider the application of Minn.Stat. § 237.075, subd. 10, and evidently the Commission had this in mind when it said its ruling here was not to be a precedent and the "Commission intends to further such participation [by all segments of the public] in the future by directing reimbursement of intervention costs where appropriate * * *."

On this record, we cannot say the Commission's denial of reimbursement to MPIRG and SCAR was arbitrary and capricious, and we affirm the Commission's denial of reimbursement, thereby reversing the court of appeals' contrary ruling.

Affirmed in part and reversed in part.

---

**3.** The Department of Public Services refused to make recommendations on specific requests: "Only the Commission can make these subjective determinations." The Residential Utilities Division opined that the decision to permit the six parties to intervene was correct because each intervenor had special knowledge and interests which deserved attention; however, whether the intervenors should be reimbursed, "[o]nly the Commission knows." The Attorney General thought the participation of MPIRG and SCAR *"should* have materially and deeply affected this Commission's deliberations."