Aparna **GANGULI**, Relator,

v.

**UNIVERSITY OF MINNESOTA,**
**Respondent.**

No. C6–93–1301.

Court of Appeals of Minnesota.

March 15, 1994.

John H. Gilmore, St. Paul, for relator.

Mark R. Rotenberg, Gen. Counsel, Julie A. Sweitzer, Associate Gen. Counsel, University of Minnesota, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and KALITOWSKI and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge *.

The University of Minnesota denied tenure to Aparna Ganguli and terminated her probationary appointment. Ganguli obtained a writ of certiorari, seeking review of the University's decision. On appeal, Ganguli claims that the University's actions violated her employment contract, were based upon improper procedures, and were arbitrary and capricious. We agree, and reverse and remand for a complete evidentiary hearing before the full University Senate Judiciary Committee.[1]

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Ganguli also alleges that the University violated procedural and substantive due process. Ganguli does not support those allegations with constitutional analysis or citation; therefore, we do not address the allegations. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519, 187 N.W.2d 133, 135 (1971) ("assignment of error based on mere assertion and not supported by any argument or authorities in appellant's

## FACTS

The University of Minnesota hired Aparna Ganguli in 1985 as an instructor in the General College mathematics department. Ganguli completed her Ph.D. in 1986, and was promoted to a probationary tenure-track position as assistant professor. The University's regulations provide for a maximum tenure process of six years.

Professor David Giese, head of the Science, Business, and Mathematics (SBM) division of the General College, was originally charged with preparing Ganguli's case during the tenure review process. In 1991, five years into Ganguli's tenure process, the Dean of the General College removed Professor Giese from Ganguli's case because of a perception by SBM faculty that Giese's behavior towards Ganguli was negative and judgmental, compromising the integrity of Ganguli's tenure process. The Dean appointed Dr. Thomas Brothen, head of the Social and Behavioral Sciences division of the General College, to replace Professor Giese.

Throughout her six years as an assistant professor, Ganguli received generally positive annual reviews recommending continuation of her probationary appointment. In addition, in the sixth year, the University solicited more than 40 external reviews and received approximately 30 responses, most of which were favorable.

The SBM tenured faculty voted that Ganguli be awarded tenure and promoted to associate professor. The vote was 12 for and 2 against tenure, and 7 for and 2 against promotion.

Dr. Brothen submitted a draft analysis of Ganguli's file to the General College tenured faculty, who discussed Ganguli's case and voted that she be awarded tenure and promoted to associate professor. The vote was 22 for and 10 against tenure, with one abstention, and 18 for and 11 against promotion, with one abstention.

The Non–Health Sciences Promotion and Tenure Review Committee also voted in favor of tenure and promotion. The vote was 3 for and 1 against tenure and promotion, with one abstention. Dr. Brothen then formally transmitted Ganguli's file to the Dean of the General College, along with a letter of recommendation. The letter was, however, generally negative in tone, criticizing Ganguli's research and publication record. Dr. Brothen characterized Ganguli's case for tenure and promotion as "marginal." Ganguli was concerned that Dr. Brothen did not understand the significance of her work in mathematics. SBM faculty members had also expressed criticism of Dr. Brothen's initial analysis of Ganguli's file.

The Dean of the General College supported Ganguli's case for promotion and tenure, although he believed her case was "not the strongest * * * presented by the College." The Dean transmitted Ganguli's file to Ettore Infante, University Provost and Senior Vice President.

Provost Infante discussed Ganguli's file with the Dean of the General College. It was Infante's view that the no-votes and the abstention in the Non–Health Sciences Promotion and Tenure Review Committee reflected a view that Ganguli did not have a "compelling" case for tenure. The University's regulations, however, do not require a "compelling" case for tenure (the University's own regulations prohibit considering an abstention as a negative vote).

Anne Hopkins, Vice Provost, wrote to Provost Infante, recommending that Ganguli be awarded tenure and promoted to associate professor. Notwithstanding, in April 1992, Infante wrote a letter to Ganguli, terminating her appointment and denying tenure and promotion.

Ganguli filed a complaint with the University's Senate Judicial Committee, seeking review of Infante's decision. Infante responded to Ganguli's complaint. The Chair of the Judicial Committee appointed a three-member panel, including hearing officer David Born. For some reason, Born characterized Infante's response to Ganguli's complaint as a motion to dismiss. He initially denied the

brief is waived and will not be considered on appeal unless prejudicial error is obvious on

mere inspection").

"motion," however, stating: "The panel felt that the argument put forth in support of the motion did not present a convincing case for dismissal."

Ganguli submitted a motion for summary judgment, and the panel considered the motion at a pre-hearing conference. Large portions of the hearing were apparently inaudible, and the transcript of the conference is therefore incomplete, but it is clear that the parties contemplated that further issues would be addressed at a future hearing on Ganguli's complaint.

Several issues were addressed during the hearing. The University's representative admitted that it was unusual that Dr. Brothen was from a different division than Ganguli. The University's representative also admitted that it was extremely unusual for more than 40 external review letters to have been requested for Ganguli's case; normally six to ten would have been sufficient.

Following the prehearing conference, the panel wrote a letter to Ganguli, dismissing her complaint. Without making any findings of fact, the panel concluded that Infante did not violate the tenure code.

The panel's decision notified Ganguli of her right to appeal to the full Judicial Committee, but cautioned that the Judicial Committee had already been consulted and supported the panel's decision to dismiss Ganguli's complaint.

Ganguli appealed to the full Judicial Committee, which rejected her appeal, voting unanimously to support the panel's "findings." Ganguli and Born submitted materials to University President Nils Hasselmo, who accepted the determination of the full Judicial Committee and its panel that Ganguli's case should be dismissed.

## ISSUES

I. Did Provost Infante err by failing to make substantive findings explaining his reasons for denying tenure and promotion?

II. Did the panel err by ruling against Ganguli on her motion for summary judgment, dismissing her complaint, and failing to grant her a hearing?

III. Did the panel and the full Judicial Committee err by failing to make findings of fact?

IV. Did the panel err by consulting the full Judicial Committee before issuing a decision on Ganguli's complaint?

V. Did the University's failure to inform Ganguli of the truthful reasons for her termination violate the provisions of Minn.Stat. § 181.933 (1992)?

## ANALYSIS

Ganguli has appealed to this court by writ of certiorari pursuant to Minn.Stat. §§ 606.-01–.06 (1992). *See Honn v. City of Coon Rapids,* 313 N.W.2d 409, 414 (Minn.1981) (certiorari is appropriate to review judicial or quasi-judicial actions). The University's own procedures, requiring review of Ganguli's tenure complaint by the "Judicial" Committee, are quasi-judicial in nature. *Cf. Harford v. University of Minnesota,* 494 N.W.2d 903, 906 (Minn.App.1993) (University's grievance procedure was "arguably quasi-judicial in nature"), *pet. for rev. denied* (Minn. Mar. 30, 1993).

The supreme court has addressed the standard of review in such cases:

Review by certiorari is limited to an inspection of the record of the inferior tribunal in which the court

is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to [the] merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (quoting *State ex rel. Ging v. Board of Educ. of Duluth,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942) (overruled on other grounds)). In reviewing this matter, we are also mindful of the fact that the University's *Regulations Concerning Faculty Tenure* are a part of its contract with Ganguli. Univ.Regs., § 2.1.

## I.

In his letter denying tenure to Ganguli, Provost Infante stated:

I was not convinced * * * that your scholarship achieved the threshold of quantity or quality that I find acceptable for the awarding of indefinite tenure. Nor was the teaching record so exemplary as to compensate for limitations in the record of scholarship.

The University's regulations provide:

The University may not act contrary to the recommendation of the academic unit which made the initial recommendation except for **substantive** reasons which must be stated in writing by the Vice President * * *.

Univ.Regs., § 7.63 (emphasis added). The University's regulations do not define the term "substantive." Nor did the panel or the full Judicial Committee state whether they believed Infante's reasons were "substantive."

█ We express grave doubts whether Infante's letter provided Ganguli with "substantive" reasons for the denial of tenure and promotion. We note that when reviewing the Provost's tenure decision, the Judicial Committee must determine whether the Provost's decision was based in significant degree upon factors proscribed by applicable federal or state employment law, substantial and prejudicial violations of the University's own procedures, failure to consider data bearing materially on the faculty member's performance, material and prejudicial mistakes of fact concerning the faculty member's work or conduct, or other immaterial or improper factors. Univ.Regs., § 7.7. In the present case, it is unlikely that such review by the panel or Judicial Committee would have been feasible, in light of the brevity with which Infante explained his denial of tenure.

We also note that the SBM faculty apparently did not believe that Infante's stated reasons for denying tenure and promotion were "substantive." Rather, the faculty submitted a letter asking the administration to explain the reasons for denying tenure to Ganguli.

We do not decide whether Provost Infante's reasons were "substantive" as used within the context of the University's regulations. In light of our decision to remand for reconsideration of other procedural errors in this case, which are addressed below, we also remand to the full Judicial Committee to decide whether Infante's decision was "substantive" within the meaning of the University's regulations. On remand, the Judicial Committee or other appropriate committee may consider amending the University's tenure regulations to include a more express definition of what is meant by "substantive" reasons.

## II.

█ Ganguli claims that the panel improperly dismissed her complaint upon her motion for summary judgment. The University's rules provide that when considering a motion for summary judgment, the panel should determine "whether there is a substantial need for a hearing." Univ. Rule 14(c). Ordinarily, summary judgment assumes that "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03.

Throughout this process, Ganguli has raised several issues of material fact, including: whether Infante failed to properly consider all votes, recommendations, and reports, which had been positive; whether bias by Professor Giese may have affected the tenure review process; and whether Dr. Brothen's presentation of Ganguli's case was accurate or realistic. In light of these issues of material fact, the panel erred by dismissing Ganguli's complaint on summary judgment. Ganguli is entitled to remand for a full hearing on the merits.

## III.

Neither the panel nor the full Judicial Committee issued any findings of fact on Ganguli's complaint. In dismissing the complaint, the panel concluded:

After careful consideration, * * * the panel is of the opinion that there is not sufficient cause to believe there were procedur-

al infractions or violations of the tenure code on the part of * * * Infante in this case. In the absence of reasonable doubt concerning procedural regularities, we have decided, by unanimous vote, to dismiss the complaint.

The Chair of the Judicial Committee later sent Ganguli a letter stating that the full Judicial Committee had voted unanimously to support the "findings" of the panel.

The absence of findings by the panel and full Judicial Committee is troubling. The University's own regulations require that the Judicial Committee make findings, conclusions, and recommendations. Univ.Regs. § 15.4. By failing to make findings of fact, the University violated its own procedures included within its contract with Ganguli.

 The absence of findings also makes review difficult, if not impossible. The University's discretion is not unlimited, and its decisions must be explained. *See In re Northwestern Bell Tel. Co.*, 386 N.W.2d 723, 727 (Minn.1986). Therefore, decisions that are rendered without findings are characterized as arbitrary and capricious. *In re Applications for Auth. to Provide Alternative Operator Services*, 490 N.W.2d 920, 924 (Minn.App.1992), *pet. for rev. denied* (Minn. Dec. 15, 1992). It is not our function to sort through the record in an attempt to ascertain which evidence the panel or the full Judicial Committee considered relevant and/or credible.

Because the panel and the Judicial Committee failed to issue findings, their decisions to dismiss Ganguli's complaint were clearly arbitrary, requiring remand.

### IV.

 Ganguli claims that the panel improperly contacted the full Judicial Committee before issuing a decision on her summary judgment motion. We agree. In light of such contact, it was an exercise in futility for Ganguli to appeal to the full Judicial Committee, since that body had already stated that it agreed with the panel on the merits of Ganguli's complaint.

It is the very essence of a fair hearing that Ganguli's complaints be considered and determined by an impartial body. Tenure at the University of Minnesota is a significant achievement in the academic world. Ganguli's complaints about how that prize was denied her thus far have been treated in an arbitrary manner and prejudged by the Senate Judicial Committee. Such arbitrary action mandates reversal.

### V.

Finally, Ganguli claims that the University violated the provisions of Minn.Stat. § 181.-933 (1992):

An employee who has been involuntarily terminated may, within five working days following such termination, request in writing that the employer inform the employee of the reason for the termination. Within five working days following receipt of such request, an employer shall inform the terminated employee in writing of the truthful reason for the termination.

There is no evidence that Ganguli made a written request that the University inform her of the reason for her termination. Therefore, she cannot claim that the University erred by failing to respond to such request.[2] Furthermore, this issue was not raised in Ganguli's complaint to the Judicial Committee; thus, we decline to consider the issue for the first time on appeal. *See Fredrich v. Independent Sch. Dist. No. 720*, 465 N.W.2d 692, 696 (Minn.App.1991) (failure to raise an issue below precludes judicial review), *pet. for rev. denied* (Minn. Apr. 29, 1991).

### DECISION

From its inception, this case has been riddled with error.[3] Accordingly, and for the reasons stated above, we reverse and remand

2. Ganguli argues that the University's final decision was not made until President Hasselmo affirmed the Judicial Committee's decision. Nevertheless, Ganguli does not claim that at that point, she made the required request under section 181.933.

3. Error has continued in this case at the appellate level; our review was made more difficult as a result of the University's initial failure to transmit the complete record.

to the full Judicial Committee for a complete and impartial hearing on the issues raised by Ganguli throughout this process. Following the hearing, the panel shall issue express findings of fact, enabling meaningful review by this court, should further review become necessary.

We note that if the Judicial Committee decides that Infante's decision was not based on "substantive" reasons, the Committee must remand to Infante for a new decision providing substantive reasons supporting the decision. At that point, if Ganguli feels aggrieved, she may again appeal Infante's decision to the full Judicial Committee, which must conduct a complete and impartial hearing on the merits.

We also note, but decline to pass upon, the University's option to provide Ganguli a temporary teaching position while her tenure proceedings are being investigated and reviewed. Univ.Reg. § 15.4.

**Reversed and remanded.**