**Gloria Jean JOHNSON, Relator,**

v.

**COMMISSIONER OF HEALTH, Respondent.**

No. A03–353.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Christopher K. Sandberg, Lockridge Grindal Nauen, P.L.L.P., Minneapolis, for relator.

Mike Hatch, Attorney General, Jennifer Lois Beens Harper, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by HARTEN, Presiding Judge, HUDSON, Judge, and CRIPPEN, Judge.*

## OPINION

HARTEN, Judge.

Relator asked respondent to set aside her disqualification from providing direct contact services in her job as an adult-daily-living-services attendant. Respondent refused. Because no written findings demonstrate the application of the factors set out in Minn.Stat. § 245A.04, subd. 3b(b) (2002), we reverse and remand.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Relator Gloria Johnson has been employed for over ten years as an-adult-daily-living attendant, and has worked in facilities licensed by respondent Minnesota Department of Health (DH) since 1998. Her employment included providing direct contact services. On 16 January 2003, the Minnesota Department of Human Services notified relator that she was disqualified from performing direct care services because a background study revealed that she had been convicted of second-degree assault. The conviction resulted from an incident ten months earlier, in March 2002, when relator cut her son, age 15, in the leg with a kitchen knife during an altercation. In June 2002, relator had pled guilty and been sentenced to serve four years' probation.

Because the facilities that employed relator were licensed by DH, relator applied to DH to have her disqualification set aside. DH refused to set the disqualification aside, and relator challenges that refusal.

## ISSUE

Must a decision on a reconsideration of disqualifications under Minn.Stat. § 245A.04, subd. 3b (2002) include written findings on the statutory factors?

## DECISION

▬▬ This court may reverse an administrative decision if it was unsupported by substantial evidence or arbitrary and capricious. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001). However, this court reviews de novo errors of law that arise when an agency decision is based on the meaning of words in a statute. *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 7 (Minn.2003).

An individual who DH has disqualified may request a reconsideration of the disqualification. Minn.Stat. § 245A.04, subd. 3b(a) (2002).

The [DH] commissioner may set aside the disqualification [from performing direct care services in licensed facilities] ... if the commissioner finds that the individual does not pose a risk of harm to any person served.... In determining that an individual does not pose a risk of harm, the commissioner *shall* consider [1] the nature, severity, and consequences of the event or events that lead to disqualification, [2] whether there is more than one disqualifying event, [3] the age and vulnerability of the victim at the time of the event, [4] the harm suffered by the victim, [5] the similarity between the victim and persons served by the program [in which the individual is employed], [6] the time elapsed without a repeat of the same or similar event, [7] documentation of successful completion by the individual studied of training or rehabilitation pertinent to the event, and any other information relevant to reconsideration. In reviewing a disqualification under this section, the commissioner shall give preeminent weight to [8] the safety of each person to be served by the [individual] ... over the interests of the [individual].....

Minn.Stat. § 245A.04, subd. 3b(b) (emphasis added). Consideration of these factors is not discretionary. *See* Minn.Stat. § 645.44, subd. 16 (2002) (providing that " '[s]hall' is mandatory)."

Relator argues that DH was obliged not only to consider the statutory factors but to indicate that they had been considered. We agree. *See In re Whitehead*, 399 N.W.2d 226, 229 (Minn.App.1987) ("This absence of explanation [for a decision] prompts us to conclude that the commis-

sion acted arbitrarily and capriciously"); *Reserve Mining v. Minnesota Pollution Control Agency*, 364 N.W.2d 411, 415 (Minn.App.1985) ("an agency decision should normally be supported by written findings and reasons, in more than just a conclusory fashion, ... to be sustained on appeal"), *review dismissed* (Minn. 10 June 1985).

 In refusing to set aside relator's disqualification, DH relied on three of the eight factors: "—recency of event;—vulnerability of population to be served;—seriousness of event."[1] But, although DH told relator that it had "considered all of the information that [she] provided in applying the risk of harm factors," there is no evidence that DH considered information pertaining to the other five factors.[2]

One factor on which there is no finding is whether there is more than one disqualifying event. Here, only one disqualifying event occurred in the ten years relator worked as an assistant. Another factor without a finding is the age and vulnerability of the victim at the time of the event. Relator's son was then 15 years old and over six feet tall; relator herself is five feet four inches tall and weighs 133 pounds. A third factor is the harm suffered by the victim. Relator's son was treated and released after the incident, and a social worker reported that both relator and her son undertook counseling to avoid further altercations. A fourth factor is the similarity between the victim and persons served by the program.

There was no similarity: the victim was relator's healthy teenage son, while the persons she serves are adults who, because of age or illness, need help with daily living. Finally, no finding indicated that the DH considered the "documentation of successful completion ... of training or rehabilitation pertinent to the event." Relator provided a letter from her probation officer attesting to her completion of the conditions of her probation, i.e., a treatment plan of Child Protection Services, an anger management program, and a psychological evaluation and recommended treatment. Because relator had completed the conditions, Child Protective Services had closed the case. Relator also provided a document from Eastside Neighborhood Services saying that she had attended 23 sessions of the Women's Educational Series, had missed one session, owed no tuition, and was current on her assignments.

The fact that relator, as an irate mother, injured her grown teenage son during an altercation does not, of itself, demonstrate that she poses a risk to the safety of the elderly and ill people she serves as a healthcare professional. Absent written findings and reasons, and provided only with a conclusory explanation of the application of three of the eight factors, we cannot sustain the refusal to reconsider her disqualification. *See Reserve Mining*, 364 N.W.2d at 415.

We reverse and remand for written findings and reasons in compliance with Minn.

---

1. In its brief, DH misreads the statute in explaining its application of the "recency of event" reason given for its decision. DH claims that, when relator's request was reviewed, "less than eight months had passed since her conviction." But the relevant date is the date of the event, not the date of its judicial disposition. *See* Minn.Stat. § 245A.04, subd. 3b(b): "the time elapsed without a repeat of the same or similar event." The event occurred on 15 March 2002; the commissioner's decision is dated 21 March 2003. Therefore, a year had elapsed.

2. DH argues that this court has upheld disqualifications where not all of the factors were applied but relies on no published Minnesota decision to support that argument.

Stat. § 245A.04, subd. 3b(b) and applicable caselaw.

**Reversed and remanded.**