In the Matter of UNIVERSAL UN-
DERWRITERS LIFE INSUR-
ANCE COMPANY.

No. A04–184.

Court of Appeals of Minnesota.

Aug. 10, 2004.

John A. Knapp, Eric F. Swanson, Win-
throp & Weinstine, P.A., Minneapolis, MN,
for relator Universal Underwriters Life
Insurance Company.

Mike Hatch, Attorney General, Michael
J. Tostengard, Assistant Attorney General,
St. Paul, MN, for respondent Commission-
er of Commerce.

Diana Y. Morrissey, Erin M. Wessling,
Faegre & Benson, LLP, Minneapolis, MN,
for Consumer Credit Insurance Associa-
tion amicus curiae.

Considered and decided by MINGE,
Presiding Judge, HARTEN, Judge, and
HALBROOKS, Judge.

## OPINION

HARTEN, Judge.

Respondent Minnesota Commissioner of
Commerce notified relator Universal Un-
derwriters Life Insurance Company that it

intended to disallow relator's credit insurance rates. Relator moved for summary disposition. Following a hearing, an administrative law judge (ALJ) denied relator's motion and recommended disallowing the rates. Respondent's designee issued an order adopting that recommendation. Relator now challenges that order.

## FACTS

Credit life and disability insurance provides for payment of a debt in the event of the debtor's death or disability. Insureds buy credit insurance policies from a vendor who is their creditor, not from insurance agents. The vendor receives a commission on the credit insurance policies sold. Credit insurers therefore compete not by providing low rates to insureds but by providing high commissions to vendors, who offer purchasers only one type of credit insurance on a take-it-or-leave-it basis.

To protect consumers, Minnesota law does two things: it establishes prima facie rates that are presumptively reasonable, and it requires the Commissioner of Commerce to disallow rates that are excessive in relation to benefits. *See* Minn.Stat. § 62B.07, subd. 2 (2002).

Based on information relator submitted that its loss ratios[1] over a five-year period averaged around 20%, respondent determined that relator's credit insurance rates were excessive in relation to benefits and, in accord with the recommendation of an ALJ, issued an order disallowing relator's rates.

1. The loss ratio is the percentage of the amount collected in premiums that is paid out in benefits.

2. Amicus curiae CCIA raises the issue of unconstitutional taking, but that issue was not raised by relator and is not properly before

## ISSUES[2]

■ 1. Is the presumption of reasonableness of credit insurance rates that comply with the state's prima facie rates rebuttable by a showing that, because the insurer's average loss ratio is significantly below 50%, the rates are excessive in relation to benefits?

2. Is the commissioner's withdrawal of approval of credit insurance rates that are excessive in relation to benefits unpromulgated rulemaking?

## ANALYSIS

### Standard of Review

An appellate court may reverse or modify an administrative decision if substantial rights of the petitioners have been prejudiced by administrative findings, inferences, conclusions or decisions that are unsupported by substantial evidence in view of the entire record, or arbitrary and capricious, *see* Minn.Stat. § 14.69 (2000), but the court must also recognize the need for exercising judicial restraint and for restricting judicial functions to a narrow area of responsibility lest (the court) substitute its judgment for that of the agency. It must be guided in its review by the principle that the agency's conclusions are not arbitrary and capricious so long as a rational connection between the facts found and the choice made has been articulated.

. . . .

When reviewing agency decisions we adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and

the court. "Amici curiae may not raise statutory constitutionality issues not raised by the parties." *State v. Fingal,* 666 N.W.2d 420, 423 n. 3 (Minn.App.2003), *review denied* (Minn. 21 Oct. 2003).

deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience. The agency decision-maker is presumed to have the expertise necessary to decide technical matters within the scope of the agency's authority ..., and judicial deference, rooted in the separation of powers doctrine, is extended to an agency decision-maker in the interpretation of statutes that the agency is charged with administering and enforcing. We defer to an agency's conclusions regarding conflicts in testimony, the weight given to expert testimony and the inferences to be drawn from testimony.

*In re Excess Surplus Status of Blue Cross and Blue Shield of Minn.,* 624 N.W.2d 264, 277–78 (Minn.2001) (quotations, citations and footnote omitted).[3]

### 1. Rebutting Presumption of Reasonableness of Prima Facie Rates

■ It is undisputed that the rates relator charges are within the prima facie range established by Minnesota law and are therefore presumptively reasonable. But even when rates meet this standard, "[t]he commissioner shall ... disapprove any such [insurance] form if the premium rates ... are excessive in relation to benefits...." Minn.Stat. 62B.07, subd. 2 (2002). To determine that rates are "excessive in relation to benefits," the commissioner

shall give full consideration to and make reasonable allowances for underwriting expenses including, but not limited to, claim adjustment expenses, general administrative expenses including costs for handling return premiums, compensation to agents, expense allowances to creditors, if any, branch and field expenses and other acquisition costs, the types of policies actually issued ..., and any and all other factors and trends demonstrated to be relevant. An insurer may support these factors by statistical information, experience, actuarial computations, and/or estimates certified by an executive officer of the insurer, and the commissioner shall give due consideration to such supporting data.

*Id.* Moreover, "[T]he commissioner shall give reasonable consideration as to whether an anticipated loss ratio of 'claims incurred' to 'premiums earned' of 50 percent is developed." Minn. R. 2760.0200 (2003).

Relator pays out in claims only 20% of the amount collected for credit life insurance and 18% of the amount collected for credit disability insurance; these figures are representative of the years 1996 through 2000. Respondent found that "[relator]'s historically low loss ratios, which are substantially below the 50% loss ratio factor set out for consideration in Rule 2760.0200 and are almost half the market average, are compelling evidence that [relator's] rates are excessive...." Relator argues that respondent failed to

---

**3.** Respondent's order adopted the issues, findings, and conclusions of the ALJ's order "without change." Relator argues that a deferential standard of review does not apply because respondent "rubber stamped" the ALJ's decision in violation of *City of Moorhead v. Minn. Pub. Utils. Comm'n,* 343 N.W.2d 843, 846 (Minn.1984) ("We have consistently stressed the importance of agencies employing their expertise to reach independent decisions and not to simply 'rubber stamp' the findings of a hearing examiner.").

But respondent's order was also "[b]ased upon all of the files, records, and proceedings herein, including the ALJ's Order." Relator misreads *City of Moorhead:* its holding that a commission's disagreement with a hearing examiner's conclusions was proof that the commission had not merely "rubber stamped" the hearing examiner's decision, *id.,* does not prove that, conversely, a commission's agreement with an ALJ's conclusions is "rubber stamping" them.

consider all the statutory factors, relying on *Johnson v. Comm'r of Health*, 671 N.W.2d 921, 923–24 (Minn.App.2003) (reversing agency decision because of a lack of evidence that the agency had considered information pertaining to all the relevant statutory factors). But *Johnson* is distinguishable. The record in that case included neither written findings nor reasons for the decision and only "a conclusory explanation of three of the eight [statutory] factors." *Id.* at 924. Relator does not specify which factor was allegedly not considered, and the record indicates that the factors set out in the statute and rule were considered.

In particular, respondent considered "compensation to agents." A life and health actuary for the department both submitted prefiled expert testimony and testified at the hearing. She testified that calculating premiums based on "benefit payments, expenses, desired commissions, and desired profit ... does not ensure that the consumers receive a reasonable benefit in relation to the premium," which is the mandate of Minn.Stat. § 62B.07, subd. 2. She stated that her analysis of the factors enumerated in that statute, i.e., operating expenses and compensation to agents, indicated "a primary 'culprit' for [relator's] extremely low loss ratios: extremely high commission rates ... [that are] excessive in comparison to commissions that are paid in other states for similar policies...."[4] She concluded that, "in the judgment of most well-informed consumers [the rates] would be considered excessive."

Relator objects to the actuary's use of a "well-informed consumer" standard to determine that rates are excessive because that language is not used in the statute. But the actuary explained that "[t]he actuarial literature does not contain any infor-mation on the meaning of 'excessive' rates, and there is no commonly understood actuarial interpretation of the term. Therefore by default actuaries use the understanding of a well-informed consumer." The actuary's testimony at the hearing confirmed her prefiled testimony.

Relator also argues that respondent exceeded its statutory authority because, while the legislature mandated a 30% cap on agents' commissions for credit involuntary unemployment insurance, it mandated no such cap for credit life or disability insurance. Relator argues that respondent is usurping a legislative function by imposing a cap. But respondent has not imposed a cap on commissions; it has stated that the rates at issue are excessive because the loss ratio is 18% and 20%. This statement is well within its statutory authority. *See* Minn. R. 2760.0200 (explicitly directing respondent to consider whether a 50% loss ratio exists when determining whether rates are excessive in relation to benefits).

The record demonstrates a consideration of the statutory factors, and respondent articulated a rational connection between the facts it found and the choice it made. *See In re Excess Surplus*, 624 N.W.2d at 277 (agency's conclusions not arbitrary and capricious so long as a rational connection between the facts found and the choice made has been articulated). We see no basis for reversing the order.

## 2. Unpromulgated Rulemaking

■ Finally, relator argues that, by disallowing relator's rates, respondent is engaging in unpromulgated rulemaking in violation of the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. §§ 14.01–14.69 (2002). This court has al-

---

4. Specifically, she testified that relator pays 53% of the credit life insurance premiums and 50% of the credit disability premiums for commissions to agents.

ready addressed this issue in the context of disallowance of insurance rates. *See Reserve Life Ins. Co. v. Comm'r of Commerce*, 402 N.W.2d 631, 634 (Minn.App. 1987) (rejecting argument that Commissioner's disapproval of insurance forms was violation of MAPA), *review denied* (Minn. 20 May 1987).

> [A]n agency may formulate policy by promulgating rules or by case-by-case determinations; the agency has discretion to decide what method is appropriate in a particular situation. ... The statutes' standards of "unfair, inequitable, misleading (and) deceptive" necessitate a certain amount of interpretation. It is reasonable for the Commissioner to make such interpretations and decisions on a case-by-case basis.

*Id.* (citation omitted). Minn.Stat. § 62B.07, subd 2, similarly requires respondent to disapprove forms containing rates that are "excessive in relation to benefits" or "provisions which are unjust, unfair, inequitable, misleading, [or] deceptive...." Respondent acts within its discretion when it determines to do so on a case-by-case basis. *See L & D Trucking v. Minn. Dep't of Transp.*, 600 N.W.2d 734, 737 (Minn.App.1999) (upholding enforcement of law on a case-by-case basis and holding that such enforcement was not enforcement of an unpromulgated rule), *review denied* (Minn. 21 Dec. 1999).[5]

### DECISION

Respondent articulated a rational connection between its finding that the presumption of reasonableness of relator's credit insurance rates was rebutted by facts showing that relator's rates are excessive in relation to benefits. Respon-

---

5. In any event, by using a loss ratio far below 50% as a basis for disallowing rates, respondent is following Minn. R. 2760.0200, not making a new rule. *See Cable Communications Bd. v. Nor–West Cable Communications*

dent's decision to disapprove those rates, and the resulting disapproval, were not unpromulgated rulemaking.

**Affirmed.**

*P'ship*, 356 N.W.2d 658, 667 (Minn.1984) (if an agency's interpretation of a rule corresponds with its plain meaning, the agency is not deemed to have promulgated a new rule).